Ver. 10/31/22

COMMONWEALTH OF KENTUCKY

FRANKLIN CIRCUIT COURT

DIVISION _____

CIVIL ACTION NO. _____

HOPE OF KENTUCKY, LLC                                                    PLAINTIFFS
600 W. Main Street, Suite 400
Louisville, Kentucky 40202

and

KENTUCKY BANKERS ASSOCIATION
600 W. Main Street, Suite 400
Louisville, Kentucky 40202

                         **COMPLAINT FOR DECLARATION OF RIGHTS**
v.                        **AND FOR INJUNCTIVE RELIEF**

DANIEL CAMERON, in his official capacity as the
Attorney General of the Commonwealth of Kentucky
700 Capitol Avenue, Suite 118
Frankfort, Kentucky 40601
***(Serve:        Via Certified Mail***
                  ***and***
                  ***Via ServeTheCommonwealth@ky.gov)***

                              * * * * * * *

        Plaintiffs, for their Complaint For Declaration Of Rights And For Injunctive Relief, allege

as follows:

                                   **Parties**

1.      Plaintiff, HOPE OF KENTUCKY, LLC ("HOPE"), is a Kentucky limited liability

company engaged in the business of providing financing to build safe and affordable multifamily

housing projects.

        a.      HOPE pays taxes to the Commonwealth of Kentucky.

RECEIVED
November 2, 2022
Office of the Attorney General

Filed          22-CI-00842          10/31/2022          Amy Feldman, Franklin Circuit Clerk

b.      HOPE believes that everyone, including residents of the Commonwealth of Kentucky and areas outside of Kentucky in which it funds multifamily housing projects, deserve safe, decent and affordable housing.

c.      There is a current shortage in the Commonwealth of Kentucky and the areas outside of Kentucky in which HOPE funds, or intends to seek to fund, multifamily housing projects. According to the National Low Income Housing Coalition, across Kentucky, there is a shortage of rental homes which are affordable and available to low income households. Many of these households are severely cost burdened, spending more than half of their income on housing. Severely cost burdened poor households are more likely than other renters to sacrifice other necessities like healthy food and healthcare to pay the rent, and to experience unstable housing situations like evictions.

d.      HOPE helps address the current shortage of affordable housing by pooling funds from a network of participating lenders to finance multifamily housing projects.

e.      HOPE has helped finance over 3,000 affordable housing units by funding loans of over $300 million for more than 100 projects. More than 60 financial institutions have been involved in these financing efforts.

2.      Plaintiff, KENTUCKY BANKERS ASSOCIATION (the "Bankers Association"), is a Kentucky non-stock, nonprofit corporation created pursuant to KRS 273.161 through 273.369 and having its offices at 600 W. Main Street, Suite 400, Louisville, Kentucky 40202.

a.      The Bankers Association is a trade association having as members approximately 150 national banks, state banks and savings banks representing virtually all of the commercial banking industry in Kentucky.

b.      The Bankers Association has been in existence since 1891, and it was formally incorporated in its present form in 1911. According to Article III of the Bankers

RECEIVED
November 2, 2022
Office of the Attorney General

Association's Articles of Incorporation, the "purposes of the Association are to promote the general welfare and usefulness of banks, trust and title companies, and financial institutions doing business in the Commonwealth of Kentucky; to cultivate a more intimate social and business relation between the representatives of such institutions; to collect and disseminate financial and economic information; to secure unity of action in all matters affecting the common welfare of such institutions; and to promote the educational, financial, industrial, commercial, ecological and agricultural interests of the Commonwealth."

        c.      The activities of the Bankers Association include charitable activities such as the creation of the Kentucky Bankers Relief Fund that was established in 2005 in response to Hurricane Katrina, to help communities in need after natural disasters. The relief funds collected by the Bankers Association include funds to assist with the December 2021 tornados in Western Kentucky and the July 2022 flooding in Eastern Kentucky

        d.      HOPE is a subsidiary of the Bankers Association, and many of the Bankers Association's member banks participate in the financing programs of HOPE.

        3.      Defendant, DANIEL CAMERON, is a natural person currently holding the office of the Attorney General of the Commonwealth of Kentucky, and he is named as a defendant in that capacity ("AG Cameron").

## Nature Of The Action

        4.      This is an action to curtail, prevent and enjoin efforts by AG Cameron to regulate the business of banking that exceeds his powers as the Attorney General with those efforts most recently evidenced by his issuance on October 19, 2022, of six subpoenas and civil investigative demands which demand information about lending practices, including practices in the areas in which HOPE and its participating banks as well as other Bankers Association member institutions

RECEIVED
November 2, 2022
Office of the Attorney General

are involved. Not only is the Attorney General acting outside his jurisdiction and authority, he is wasting and improperly spending taxpayer funds in his improper efforts to do so.

5.     This is also an action to curtail, prevent and enjoin efforts by AG Cameron to burden lawful communications and associations in ways that violate constitutional rights of free speech and freedom to associate.

6.     This is also an action to obtain a declaration as to the legality of the acts of AG Cameron complained of herein.

7.     In addition to all other applicable law, Plaintiffs have standing to bring this action (a) under KRS 367.260; and (b) because they have a direct, pecuniary and substantial interest in preventing AG Cameron from improperly using taxpayer funds in connection with his subpoenas and civil investigative demands.

<u>**Jurisdiction And Venue**</u>

8.     This Court has jurisdiction over the subject matter of this case pursuant to KRS 23A.010 and KRS 418.040.

9.     Venue is proper in Franklin Circuit Court, Franklin County, Kentucky pursuant to KRS 452.405(2) because this is an action against public officials for actions done in virtue of or under color of office and the causes of action alleged herein arose, in part, within Franklin County. Venue in the Franklin Circuit Court is also proper under KRS 452.480.

<u>**The Subpoenas And Civil Investigative Demands Of AG Cameron**</u>

10.     In general, the business of banking in Kentucky is primarily regulated by the well-known and traditional banking regulators – the Kentucky Department of Financial Institutions, the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation, and the Board of Governors of the Federal Reserve System.

RECEIVED
November 2, 2022
Office of the Attorney General

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)          8354BA41-16C9-42D7-8129-5050CFBB8B86 : 000004 of 000103

COM : 000004 of 000101

11.     However, on October 19, 2022, AG Cameron exceeded the powers of his office by issuing six "Subpoena And Civil Investigative Demands" addressed to Bank of America Corporation, Citigroup, Inc., the Goldman Sachs Group, Inc., JP Morgan Chase & Co., Morgan Stanley, and Wells Fargo & Co. (the "CIDs"). The definition of "You" in each CID includes "all subsidiary companies and affiliated companies" which would include the following FDIC insured banks -- Bank of America, N.A., Citibank, N.A., Goldman Sachs Bank USA, JPMorgan Chase Bank, N.A., Morgan Stanley Bank, N.A., and Wells Fargo Bank, N.A. Attached hereto and incorporated herein by reference as **Exhibits 1 through 6** are true and correct copies of the CIDs.

12.     Upon information and belief formed after inquiry reasonable under the circumstances, AG Cameron is paying the expenses to prepare, issue, and otherwise act with respect to the CIDs with taxes paid to the Commonwealth of Kentucky.

13.     AG Cameron announced the issuance of the CIDs with a press release posted on his office's internet website, and a screen shot of that webpage is attached hereto and incorporated herein by reference as **Exhibit 7** (the "AG Press Release").

14.     AG Press Release states that his purported goal was to investigate "violations related to ESG (environmental, social, governance) investment practices." In the CIDs, the term "ESG Factors" is defined as follows:

> "ESG Factors" means factors relating to an entity's environmental, ecological, climatological, social, and/or governance attributes, risks, opportunities, impacts, or effects, whether present or future, actual or perceived, and whether or not priced into the entity's securities. This definition includes but is not limited to factors relating to an entity's environmental, ecological, climatological, or social impacts. This definition includes but is not limited to disclosable factors under SASB and/or TCFD guidelines.

15.     HOPE's business includes addressing social concerns, opportunities, impacts and effects relating to the financing and construction affordable housing.

RECEIVED
November 2, 2022
Office of the Attorney General

16. Without limiting the ways that the CIDs bear upon subjects involving constructing affordable housing, HOPE's evaluation of housing financing involves, among other things, understanding, evaluating and underwriting the costs of the construction and the operation of affordable housing projects that will inevitably be affected by methods of producing energy. In addition, the financing and construction of affordable housing plainly has "social … risks, opportunities, impacts or effects" within the meaning of ESG Factors as used in the CIDs.

17. The Bankers Association's activities include addressing environmental, ecological, climatological, and social activities (a) through its Kentucky Bankers Relief Fund and (b) through its activities as a trade association of its members which assist them in lending to or engaging with banking transactions with entities that have risks on account of their environmental, ecological, climatological and/or social activities.

18. The AG Press Release does not do justice to the amazing and disturbing broad overreach of the CIDs. For example,

    a.    The definition of "Global Climate Initiative" is the following:

"Global Climate Initiative" means any group, organization, or affiliation of private and/or public entities for the purpose of utilizing the financial system to reduce or eliminate greenhouse gas emissions or <u>otherwise pursue environmental goals</u>. Global Climate Initiatives include but are not limited to the Glasgow Financial Alliance for Net Zero and Net-Zero Banking Alliance. [Emphasis added]

    b.    The definition of "Environmental Goals" is "achieving an outcome or changing behavior, including not limited to changing information disclosure practices, relating to any aspect of the environment or environmental policy."

    c.    "Any aspect of the environment" can range from water quality to air pollution to solid waste disposal to recycling to flood control, to fertilizers, to pesticides, to plastics, to wildlife habitat, to endangered species, to energy efficiency, and list could go on and on.

RECEIVED
November 2, 2022
Office of the Attorney General

8354BA41-16C9-42D7-8129-5050CFBB8B86 : 000006 of 000103

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

COM : 000006 of 000101

d.      Then, in Demand For Documents ¶2, the CIDs demand production of "all Documents and Communications related to any Global Climate Initiative or any committee, board group, or subgroup thereof." This Demand For Documents appears in all six of the CIDs.

19.     Another example of the excessive scope of the CIDs is Demands For Information ¶15 which is a demand by AG Cameron to "Identify all entities to which You provide banking services that are part of the auto manufacturing industry, energy industry, or power generation industry." This is the paragraph number for the Demand For Information for the Bank Of America Corporation (Complaint Exhibit 1). An equivalent demand is contained in all other of the CIDs though the specific paragraph number may be different. For the remainder of the Complaint, the CIDs paragraph number in this Complaint is from Exhibit 1 though similar paragraphs are contained in the other CIDs (though possibly with slightly different specific paragraph numbers).

20.     Another example of the excessive scope of the CIDs is Demands For Information ¶19 which is a demand by AG Cameron to "Explain the manner in which You incorporate Your assumptions about energy transition and government mandates into Your general macroeconomic forecasts …."

21.     These excessive demands are just the "tip of the iceberg" of the huge scope of the information and reporting demands of the CIDs. There are 24 separate Demands For Information and 20 separate Demands For Documents in CIDs Exhibit 1, and the CIDs and Press Release plainly create unreasonable burdens upon and governmental investigations against businesses and people who might worry about, discuss, or even think about global climate change or environmental activities.

22.     It is common knowledge that people in Kentucky are discussing whether or not the December 2021 Western Kentucky tornados or the July 2022 Eastern Kentucky flooding were exacerbated by climate change. How to respond to those disasters includes what environmental

RECEIVED
November 2, 2022
Office of the Attorney General

goals and policies, including zoning and building standards, are impacted or affected or involve remedying these disasters.  How to respond to those disasters includes loans to affected persons which involve the risks of repayment that may include a borrower's "ESG Factors".

a. Since the Bankers Association is involved in providing relief to these disasters, Paragraph 1 of the CIDs Demands For Information would require the Bankers Association to identify "all of Your divisions, groups, offices, or business segments whose responsibilities relate" to those activities, and Paragraph 2 of the Demands For Documents would permit AG Cameron to demand production of "all Documents and Communications related" to these activities, including discussions about how to deal with natural disasters plainly affecting Kentucky.

b. Since members of the Bankers Association are involved in banking and lending in the areas impacted by these disasters, AG Cameron could require, as part of Demands For Information ¶24, information about "any interactions or engagements … related to … trade association activities…."

## Count 1
## AG Cameron Is Acting In Excess Of His Legal Authority

23. Plaintiffs incorporate by reference and reallege the allegations set forth in Paragraphs 1 through 22 of this Complaint.

24. Kentucky has addressed by statute the extent to which financial institutions are to be examined by Kentucky governmental entities, and that authority under state law is assigned by KRS 286.1-011 to the Kentucky Department of Financial Institutions.

25. KRS 286.1-011(2) states as follows:

(2) The Department of Financial Institutions shall exercise all administrative functions of the state in relation to the regulation, supervision, chartering and licensing of banks, trust companies, savings and loan associations, consumer loan companies, investment and industrial loan companies, and credit unions, and in relation to the regulation of securities.

RECEIVED
November 2, 2022
Office of the Attorney General

26.     On account of KRS 286.1-011(2), AG Cameron does not have authority to issue the CIDs.

27.     Furthermore, in the first paragraph of the CIDs, AG Cameron asserts that the CIDs are issued "Pursuant to the authority granted in KRS 367.240 and KRS 367.250, two statutes that are part of the Kentucky Consumer Protection Act, KRS 367.110 to KRS 367.300 (the "KCPA").

28.     The purpose of the KCPA is stated in KRS 367.120(1): "to protect the public interest and the well-being of the consumer public and the ethical sellers of goods and services."

29.     KRS 367.170 of the KCPA defines unlawful acts prohibited by the KCPA as follows:

**367.170 Unlawful acts.**
(1) Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
(2) For the purposes of this section, unfair shall be construed to mean unconscionable.

30.     A decision of any business as to the extent to which it will consider any of the ESG Factors or any other of the subjects of the CIDs in its business operations is not an unfair, false, misleading or deceptive act or practice within the meaning of KRS 367.170.

31.     AG Cameron is not investigating any acts or practices declared unlawful by the KCPA.

32.     In addition, the period covered by the CIDs is "from January 1, 2015 to the present". *See* Instructions ¶1.  However, under KRS 413.120(2) and KRS 413.150, the statute of limitations for a violation of KRS 367.170 is five (5) years after the cause of action accrued.  The CIDs are seeking information about matters for which an enforcement action under the KCPA would be untimely.

33.     In addition, the CIDs seek information about activities outside the Commonwealth of Kentucky that may be lawful or even required under the laws of such jurisdictions.  As such, the

RECEIVED
November 2, 2022
Office of the Attorney General

CIDs are beyond the scope of the KCPA and also in violation of the Commerce Clause of the Constitution of the United States of America. Article 1, Section 8, Clause 3.

34.     KRS 367.260 addresses unreasonable investigations by AG Cameron.  The statute states:

> **367.260 Unreasonable investigation.**
> Any person may apply to a Circuit Court for an appropriate order to protect such person from any unreasonable investigative action taken pursuant to KRS 367.110 to 367.300.

35.     HOPE and the Bankers Association are each a "person" within the meaning of KRS 367.260 and KRS 367.110(1).

36.     The CIDs, and AG Cameron's efforts relating thereto, are "unreasonable investigative action" within the meaning of KRS 367.260, and they are improper and illegal.

WHEREFORE, Plaintiffs demand judgment against Defendant as set forth in their Prayer for Relief below.

**Count 2**
**AG Cameron Is Violating First Amendment Rights**

37.     Plaintiffs incorporate by reference and reallege the allegations set forth in Paragraphs 1 through 36 of this Complaint.

38.     The CIDs issued by AG Cameron violate rights of speech and association guaranteed to HOPE, the Bankers Association, and their participating lenders and members by the Constitutions of the United States of America and Kentucky.

39.     Without limiting the ways that the CIDs are violative of free speech and association rights:

a.     The CIDs demand the production of "all … Communications related to interactions, engagements, or meetings between You and any covered Company related to the Covered Company meeting any Environmental Goal(s)."  *See* Demand for Documents ¶5.

RECEIVED
November 2, 2022
Office of the Attorney General

b.      The CIDs demand that a recipient "Describe Your political projections …

including but not limited to the political composition of Congress and the Executive branch, adopted

legislation and administrative rules …." *See* Demand For Information ¶16

c.      The CIDs demand that a recipient describe "any Communications with, or

other actions taken by You, to engage with any nationally recognized statistical rating

organization." *See* Demand For Information ¶11

d.      The CIDS demand that a recipient "Identify any interactions or engagements

You have had with a Covered Company related to the Covered Company's political, lobbying, or

trade association activities…."  A "Covered Company" is "any entity to which You provide banking

services of any kind that may be implicated by any commitment You made or intend to make to any

Global Climate Initiative."

40.     The very existence of the CIDs calls into question and chills the Plaintiffs' rights to

think, speak and associate freely and without unwarranted governmental intrusion or criticism.

41.     The CIDs state on page 12 that "There is a continuing obligation to disclose pursuant

to this CID."   In effect, the CIDs are creating an ongoing state surveillance system on

communications and activities of a recipient and with the persons a recipient is interacting.

**Count 3**
**AG Cameron Is Violating 2022 Senate Bill 205**

42.     Plaintiffs incorporate by reference and reallege each and every allegation contained

in Paragraphs 1 through 41 above.

43.     The definition of Global Climate Initiative and the other provisions of the CID's are

plainly motivated by AG Cameron's opposition to "utilizing the financial system to reduce or

eliminate green house gas emissions or otherwise pursue environmental goals."

44.     The subject of the extent to which the Commonwealth of Kentucky's governmental entities should be concerned with the financing of fossil energy producers was the subject of extensive debate and discussion in the 2022 regular session of the Kentucky General Assembly and led to the enactment of Senate Bill 205 title "AN ACT relating to state dealings with companies that engage in energy company boycotts."  A true and correct copy of Senate Bill 205 as enacted is attached hereto as **Exhibit 8** and incorporated herein by reference.  Senate Bill 205 is codified at KRS 41.470 through KRS 41.480.

45.     In general, Section 3 of Senate Bill 205 (codified at KRS 41.474) assigns to the Kentucky State Treasurer (the "Treasurer") the task of preparing and maintaining and providing to each Kentucky state governmental entity a list of all financial companies that, to the Treasurer's knowledge, have engaged in energy company boycotts.  Upon information and belief formed after inquiry reasonable under the circumstances, the Treasurer is currently involved in drafting regulations, policies and/or procedures to implement Senate Bill 205.

46      Section 3 of Senate Bill 205 then provides that Kentucky government entities must, subject to certain exceptions, divest from owning publicly traded securities of a company that the Treasurer lists as being engaged in energy company boycotts.

47.     Section 5 of Senate Bill 205 (codified at KRS 41.480) prohibits, with certain exceptions, a Kentucky governmental entity from entering into a contract worth $100,000 or more with a company having ten or more full-time employees unless that contract contains a written verification from the contracting company that it does not engage in energy company boycotts and requires that the contracting company will not engage in energy company boycotts during the term of the contract.

48.     An important point is the Senate Bill 205 does not outlaw energy company boycotts. It only provides that (a) publicly traded securities of covered companies that do so may not be

RECEIVED
November 2, 2022
Office of the Attorney General

8354BA41-16C9-42D7-8129-5050CFBB8B86 : 000012 of 000103

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

COM : 000012 of 000101

owned by Kentucky government entities, and (b) covered companies that do so may not have large contracts with Kentucky governmental entities;, and, there are even exceptions to these consequences.

49.     Section 4(2) of Senate Bill 205 (codified at KS 41.476(2)) authorizes the Kentucky Attorney General or the Treasurer to "bring any civil action necessary to enforce" the provisions of Senate Bill 205.  Senate Bill 205 does not contain any stand-alone subpoena authority.

50.     AG Cameron's issuing the CIDs is inconsistent with the provisions of, and the policy choices evidenced by, Senate Bill 205.

a.     First, the General Assembly has plainly assigned to the Treasurer, and not the Attorney General, the task of determining who might be engaged in an energy company boycott.

b.     Second, the General Assembly has plainly established the scope of the activities and the remedies for energy company boycotts, and they are not a violation of the KCPA (the basis for AG Cameron's CIDs).

c.     Third, if the Attorney General wants to address actions that would be a violation of Senate Bill 205, Section 4(2) (KRS 41.476(2)) requires that he first bring a civil action. Then, the scope of his investigation is governed by the applicable civil rules of discovery and Circuit Court oversight.  The CIDs improperly circumvent this process and oversight.

WHEREFORE, Plaintiffs demand judgment against Defendant as set forth in their Prayer for Relief below.

## Prayer For Relief

WHEREFORE, Plaintiffs demand as follows:

I.     That this Court issue a declaration that AG Cameron does not have the statutory authority to issue or enforce the CIDs; and

RECEIVED
November 2, 2022
Office of the Attorney General

II.     That this Court issue a declaration that the CIDs violate the Plaintiffs' rights to free speech and association guaranteed by the Constitutions of the United States of America and the Commonwealth of Kentucky; and

III.    That this Court (a) quash the CIDs, and (b) enjoin and prohibit AG Cameron and all other persons in active concert or participation with him from taking any steps to enforce the CIDs or to issue any new CIDs, and (c) direct AG Cameron to notify any person subpoenaed or investigated pursuant to the CIDs that the CIDs have been quashed; and

IV.     That Plaintiffs recover their costs herein expended and receive any and all other relief to which they may appear entitled.

Respectfully submitted,

MORGAN POTTINGER MCGARVEY

By: _/s/ John T. McGarvey_____

|  |  |
|---|---|
| Of Counsel: | John T. McGarvey (KBA #46230) |
| Debra K. Stamper (KBA #83890) | jtm@mpmfirm.com |
| dstamper@kybanks.org | M. Thurman Senn (KBA #82343) |
| Kentucky Bankers Association | mts@mpmfirm.com |
| 600 West Main Street | 401 South Fourth Street, Suite 120 |
| Louisville, Kentucky  40202 | Louisville, Kentucky  40202 |
| (502) 582-2453 | (502) 589-2780 |
|  | *Counsel for Plaintiffs* |

RECEIVED
November 2, 2022
Office of the Attorney General



8354BA41-16C9-42D7-8129-5050CFBB8B86 : 000015 of 000103

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

COM : 000015 of 000101

COMMONWEALTH OF KENTUCKY
## OFFICE OF THE ATTORNEY GENERAL

DANIEL CAMERON
ATTORNEY GENERAL

1024 CAPITAL CENTER DRIVE
SUITE 200
FRANKFORT, KY 40601

## SUBPOENA AND CIVIL INVESTIGATIVE DEMAND
## IN RE INVESTIGATION OF:

**Net-Zero Banking Alliance**

TO:        **Bank of America Corporation**
           **Bank of America Corporate Center**
           **100 North Tryon Street**
           **Charlotte, NC 28255**

SERVE:     **CT Corporation System**
           **306 W Main Street**
           **Suite 512**
           **Frankfort, KY 40601**

Pursuant to the authority granted in KRS 367.240 and 367.250, the Attorney General of Kentucky, having reason to believe that a person has engaged in, is engaging in, or is about to engage in any act or practice declared to be unlawful by KRS 367.110 to 367.300; or having reason to believe it is in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in, is engaging in or is about to engage in, any act or practice declared to be unlawful by KRS 367.110 to 367.300; or both, hereby executes this Subpoena and Civil Investigative Demand, as follows:

_____   That Bank of America Corporation furnish, under oath or affirmation, a report in writing setting forth the relevant facts and circumstances of which Bank of America Corporation has knowledge.

_____   That Bank of America Corporation personally appear and testify at the following location on the following date and time: _____

__X__   That, under oath or affirmation, Bank of America Corporation answer the following requests and produce the following documents at the time and place above or, if blank, then by emailing them together with a completed sworn statement of authenticity and completeness of documents, by no later than twenty-one (21) days following service of this Subpoena and Civil Investigative Demand to: zach.richards@ky.gov and donald.haas@ky.gov or

**RECEIVED**
**November 2, 2022**
**Office of the Attorney General**

An Equal Opportunity Employer M/F/D

EXHIBIT 1

**Office of the Attorney General of Kentucky**
**ATTN: Zachary Richards & Donald Haas**
**1024 Capital Center Drive**
**Suite 200**
**Frankfort, KY 40601**

**Failure to comply with this Subpoena and Civil Investigative Demand may result in legal action pursuant to KRS 367.290. Intentional concealment, falsification or destruction of documents may be punishable as a class A misdemeanor under KRS 367.990(3). It is a class D felony to intentionally destroy, mutilate, conceal, remove, alter, or fabricate physical evidence believing that an official proceeding may be pending or instituted, pursuant to KRS 524.100.**

Date Issued: October 19, 2022

DANIEL CAMERON
ATTORNEY GENERAL

By: */s/ Zachary J Richards*
Zachary J Richards
Kentucky Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY 40601
502-696-5519
Email: zach.richards@ky.gov

/s/ *Donald Haas*
Donald Haas
Kentucky Office of the Attorney General
1024 Capital Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY 40601
502-696-5612
Email: donald.haas@ky.gov

RECEIVED
November 2, 2022
Office of the Attorney General

**PROOF OF SERVICE OF SUBPOENA AND CIVIL INVESTIGATIVE DEMAND**
**(to be completed by server)**

Served via:      __x__        1. Certified mail, return receipt requested.

             _____        2. Personal delivery

             _____        3. Fax

Date of service:     _____


**PERSON SERVED (for personal delivery)**


Name:        _____


Title:        _____


Description:   _____

_____

_____

_____

_____

_____


**SERVED BY:**

Name:        _____


Title:        _____


Signature:    _____

RECEIVED
November 2, 2022
Office of the Attorney General

## <u>DEFINITIONS AND INSTRUCTIONS</u>

### DEFINITIONS

As used herein:

As used in this Demand, the following terms shall have the meanings set forth herein:

"You" and "Your" means Bank of America Corporation and all agents, representatives, employees, independent contractors, attorneys, and other persons acting or purporting to act on its behalf, all subsidiary companies and affiliated companies, board of directors and advisory boards, and all joint projects, teams, or endeavors with any third party.

"All" and "any" shall each be construed to encompass the meanings of the words "all" and "any."

"And" and "or" shall be construed broadly to include both the disjunctive and the conjunctive, to be equivalent to "and/or," in order to render these Requests as broad as possible.

"Communication" means any expression, statement, conveyance, or dissemination of any words, thoughts, statements, ideas, or information, regardless of form, format, or kind. "Communication" includes but is not limited to oral or written communications of any kind, such as telephone conversations, discussions, meetings, notes, memoranda, letters, agreements, emails or other electronic communications, text messages, facsimiles, and other forms of written or oral exchange that are recorded in any way, including video recordings, audio recordings, written notes, or otherwise. Any Communication that also falls within the definition of "Document" shall constitute both a Document and a Communication for purposes of this civil investigative demand.

"Covered Company" means any entity to which You provide banking services of any kind that may be implicated by any commitment You made or intend to make to any Global Climate Initiative.

"Document" includes every "writing," "recording," and "photograph" as Federal Rule of Evidence 1001 defines those terms, as well as any "duplicate" of any writing, recording, or photograph. "Document" includes but is not limited to electronic documents, files, databases, and records, including but not limited to emails, voicemails, text messages, calendar appointments, instant messages, MMS messages, SMS messages, iMessages, computer files, spreadsheets, memoranda, books of accounts, ledgers, invoices, financial statements, purchase orders, receipts, canceled checks, charts, graphs, bills, facsimiles, and metadata. The term Document includes every draft of any other material that falls within the definition of Document.

"Environmental Goals" means achieving an outcome or changing behavior, including but not limited to changing information disclosure practices, related to any aspect of the environment or environmental policy. This definition includes but is not limited to goals that seek net zero greenhouse gas emissions standards or disclosures, compliance with the Paris Agreement (a.k.a. Paris Climate Agreement or Paris Climate Accords) or any agreement made at COP 26, the

RECEIVED
November 2, 2022
Office of the Attorney General

imposition of a carbon tax, and/or adoption of electric vehicles, or renewable energy, including wind and solar power.

"ESG Factors" means factors relating to an entity's environmental, ecological, climatological, social, and/or governance attributes, risks, opportunities, impacts, or effects, whether present or future, actual or perceived, and whether or not priced into the entity's securities. This definition includes but is not limited to factors relating to an entity's environmental, ecological, climatological, or social impacts. This definition includes but is not limited to disclosable factors under SASB and/or TCFD guidelines.

"ESG Integration Practices" means the practice of incorporating ESG factors into Your decisions related to provision of banking services and/or engaging with Covered Companies on issues relating to ESG Factors. This definition includes but is not limited to the practice of leveraging Your position as a provider of banking services to an entity or entities to take actions advancing environmental, ecological, climatological, social, or corporate governance-related goals. This definition further includes, but is not limited to, the use of screens or filters based on environmental, ecological, climatological, social, or corporate governance criteria in determining whether to enter into a banking relationship with an entity or entities. "ESG Integration Practices" shall be construed to include all similar activities, including activities described as "responsible banking" and/or "sustainable banking."

"Global Climate Initiative" means any group, organization, or affiliation of private and/or public entities for the purpose of utilizing the financial system to reduce or eliminate greenhouse gas emissions or otherwise pursue environmental goals. Global Climate Initiatives include but are not limited to the Glasgow Financial Alliance for Net Zero and Net-Zero Banking Alliance.

"Identify", when used with respect to a Person or entity, means information sufficient to allow employees of the Attorney General to ascertain the current contact information (name, home or business address, telephone number, email), and if not a natural person, the current contact information for Your point of contact with the entity or facility to be identified, as well as the relationship of that Person or entity to You.

"Identify", when used with respect to a fact or event, means information sufficient to allow employees of the Attorney General to ascertain the fact or event with reasonable particularity, and to identify each Person believed to have knowledge with respect to the fact or event and each Document that refers or relates to the fact or event.

"Identify", when used with respect to a transaction, means to provide information sufficient to allow ascertainment of the banking and financial information of the sending and receiving parties, the method of payment or funds transfer, and the natural persons involved with the transfer or payment.

"Identify", with regard to a Communication, means to state with specificity the date of the Communication; the medium of communication; the location of the Communication; the name(s) and alias(es) of the Person(s) who made the Communication; and the name(s) and alias(es) of all Persons who were present when the statement was made, who received the Communication, who

RECEIVED
November 2, 2022
Office of the Attorney General

heard the Communication, or who came to know of the content of the Communication at a later time.

"Person" means any natural person, corporation, proprietorship, partnership, association, firm, or entity of any kind.

"Relating to", "related to", and "relate to" mean to be relevant in any way to the subject matter in question, including without limitation all information that directly or indirectly contains, records, reflects, summarizes, evaluates, refers to, is pertinent to, indicates, comments upon, or discusses the subject matter; or that states the background of, or was the basis for, or that records, evaluates, comments, was referred to, relied upon, utilized, generated, transmitted, or received in arriving at any conclusion, opinion, estimate, position, decision, belief, policy, practice, course of business, course of conduct, procedure, or assertion concerning the subject matter.

"Research" means any and all research, analysis, assessment, study, report, audit, memorandum, or other investigation You conducted, drafted, created, commissioned, reviewed, received, or used.

## INSTRUCTIONS

1. Unless specifically stated otherwise, please restrict your search for all information and documents requested below to the period from January 1, 2015, to the present.

2. For each Demand for Information and Documents, you shall type the Demand and type Your corresponding response.  You should identify—by Bates range, or by file names and locations—which Documents are responsive to each Demand.  If You do not know the answer to a Demand, You shall identify in Your response the individual or business entity that has the answer to the Demand for Information. The document on which You type each Demand and Your corresponding response shall be executed by You before a Notary Public.

3. No demand seeks privileged information.  If You believe that You have responsive materials that are privileged, please produce a privilege log that identifies each Document or Communication, the basis for withholding the Document, the reason withheld, and sufficient information to permit the Attorney General's Office to assess the applicability of the privilege and/or the work-product doctrine.

4. You are required to produce the following requested Documents and information, to the extent that they are within your possession, custody, and/or control.

RECEIVED
November 2, 2022
Office of the Attorney General

## DEMAND FOR INFORMATION AND DOCUMENTS

### DEMANDS FOR INFORMATION

1.     Identify all of Your divisions, groups, offices, or business segments whose responsibilities relate or used to relate to Your membership in the Net-Zero Banking Alliance or to Your ESG Integration Practices, and identify all executives, directors, officers, managers, supervisors, or other leaders of each division, group, office, or business segment.

2.     Identify each Global Climate Initiative with which You are affiliated and explain the reasons You chose to join such Global Climate Initiatives.

3.     For each Global Climate Initiative with which you are affiliated, identify who made the decision to join the Initiative, including any involvement or input from Your Board of Directors, investors, or Covered Companies in Your reasoning or decision.

4.     Describe Your involvement in each Global Climate Initiative in which You participate, including the date You first began participating, any promises, pledges, or other commitments You made to the Global Climate Initiative, or any actions You made or took pursuant to, or consistent with, such commitments, or Your initial or on-going participation, and the employee(s) responsible for managing Your relationship with each Global Climate Initiative.

5.     Describe Your involvement with the Steering Group of the Net-Zero Banking Alliance, including but not limited to identifying the "C-suite delegate" who represents You on the Steering Group at the "Principal level," the identities of other "C-suite delegates" from other members of the Steering Group, the identities of any other individuals who represented You to the Steering Group, and the dates, times, and locations of all Steering Group meetings.

6.     Identify the objectives and mission of the Net-Zero Banking Alliance and describe how You incorporated these objectives into Your operations, including an explanation of how You "embedded" the strategy of the Net-Zero Banking Alliance "at the heart" of Your operations.

7.     Describe the extent to which You have incorporated the Principles for Responsible Banking into Your operations, including but not limited to the extent to which You consulted with other Net-Zero Banking Alliance signatories as part of the incorporation process.

8.     Describe Your CEO's involvement as a member of the Glasgow Financial Alliance for Net Zero Principals Group, including but not limited to the dates, times, and locations of all Principals Group meetings, and any commitments, pledges, or other promises made by Your CEO, either for himself or on Your behalf, as part of his membership in the Principals Group.

RECEIVED
November 2, 2022
Office of the Attorney General

9.      Describe the extent to which You, as a signatory to the Net-Zero Banking Alliance, have acted consistent with Your commitment to "facilitat[e] the necessary transition in the real economy through prioritizing client engagement and offering products and services to support clients' transition."

10.     Describe the extent to which You, as a signatory to the Net-Zero Banking Alliance, have acted consistent with Your commitment to "engag[e] on corporate and industry (financial and real economy) action, as well as public policies, to help support a net-zero transition of economic sectors in line with science and giving consideration to associated social impacts."

11.     Describe the extent to which You, as a signatory to the Net-Zero Banking Alliance, have acted consistent with Your commitment to "support[] innovation, the near-term deployment of existing viable technologies, and scal[e] up the financing of credible, safe, and high-quality climate solutions that are compatible with other Sustainable Development Goals."

12.     In responding to Requests 8-11, please include any Communications with, or other actions taken by You, to engage with any nationally recognized statistical rating organization.

13.     In Your April 2022 paper "Approach to Net Zero" You identified "2030 Targets" for various aspects of Your operations, including "Financing Activity" targets for the auto manufacturing, energy, and power generation industries, and further indicated that "[a]s part of net zero strategy and in alignment with NZBA guidelines, [You] plan to set milestone targets for other key sectors through 2024 to cover a significant majority of [Your] financed emissions."  Please explain: (a) How You set those targets, including specifically identifying all Communications You had with any outside party, including but not limited to contractors or consultants, relating to the setting of those targets; (b) What other key sectors You plan to set milestone targets for through 2024; and (c) The mechanism by which Your additional milestone targets will be aligned with NZBA guidelines..

14.     Please identify all ways in which Your operations materially deviate from the NZBA Guidelines for Climate Change Target Setting.

15.     Identify all entities to which You provide banking services that are part of the auto manufacturing industry, energy industry, or power generation industry, as You used those terms in Your April 2022 paper entitled "Approach to Net Zero."

16.     In Your paper "Countdown to 2050" You note that "a single financial services company can contribute to a net-zero world, but when an entire industry comes together around that goal, capitalism has the power to effect global change."  Please describe what steps You have taken to get "an entire industry" to "come[] together" around the goal of achieving net zero, including but not limited to: (a) Any agreements You have reached with any other financial institution to coordinate action to achieve net zero, including but not limited to any commitments You have made as part of Your membership in any Global Climate Initiative of which other financial institutions are also members; (b) Any Communications You have had with any other financial institution relating to a Covered Company achieving any Environmental Goal; and (c)

RECEIVED
November 2, 2022
Office of the Attorney General

Any Communications You have had with any Covered Company about how it will be difficult for that Covered Company to finance its activities without achieving specified Environmental Goals.

17.     Explain the basis of Your expectation, as a signatory to the Net-Zero Banking Alliance, that "governments will follow through on their own commitments to ensure that the objectives of the Paris Agreement are met," including but not limited to: (a) Whether You believe the United States government will meet its commitments under the Paris Agreement; (b) The legal mechanism by which it will meet these commitments; and (c) Any assumptions related to the structure and function of the Federal government that underlie Your belief.

18.     Describe Your United States political projections underlying Your predictions regarding any mandates, or subsidies in the United States related to achieving Environmental Goals, including but not limited to: (a) The political composition of Congress and the executive branch; (b) Adopted legislation and administrative rules,; (c) The composition of the Supreme Court and the status of *Chevron* deference to administrative agencies; (d) The status of the filibuster; (e) The impact of any mandates or subsidies on energy prices and the impact of increasing energy prices on an incumbent party's control of Congress or the executive branch.

19.     Explain the manner in which You incorporated Your assumptions about energy transition and government mandates into Your general macroeconomic forecasts, and forecasts for Covered Companies.  For example, to the extent Your analyses of credit risk for a Covered Company presumed that the United States would limit or prohibit fossil fuel-based energy production by a certain date, please explain how You incorporated that assumption into Your analyses of the costs of energy, the impact of those costs on economic growth in general and the credit risk of other Covered Companies, and the financial performance of other U.S. companies affected by those changes.

20.     Identify and explain all Communications, interactions, or engagements You have had with Covered Companies about the Covered Company meeting any Environmental Goal.

21.     Identify and explain all changes made by Covered Companies in response to the Communications, interactions, or engagements described in the answer to Interrogatory 20, including but not limited to any commitments made by a Covered Company to meet any Environmental Goal.

22.     Identify and explain the methodology and results of any analysis You conducted relating to the economic impact of transitioning all Covered Companies to net zero by 2050, including but not limited to the costs associated with the transition and any assumptions You made relating to any government action that might be taken to facilitate the transition such as new laws, regulations, mandates, or subsidies.

23.     Identify all entities with which You declined to do business or chose to stop doing business due either directly or indirectly to Environmental Goals, ESG Factors, or ESG Integration Practices and explain how the Environmental Goal, ESG Factor, or ESG Integration Practice informed Your decision.

RECEIVED
November 2, 2022
Office of the Attorney General

24.     Identify and explain any interactions or engagements You have had with a Covered Company related to the Covered Company's political, lobbying, or trade association activities, including any such activities related to environmental issues, reduction of greenhouse gas emissions, restrictions on fossil fuel use, or compliance with the Paris Agreement/Paris Climate Accords, and explain how any resulting change in a Covered Company's operations aligned with the economic interests of the Covered Company.

## DEMANDS FOR DOCUMENTS

1.     Produce all Documents and Communications related to Your decision to join each Global Climate Initiative of which You are a member, including but not limited to the Net-Zero Banking Alliance.

2.     Produce all Documents and Communications related to any Global Climate Initiative or any committee, board, group, or subgroup thereof, and including, without limitation, all Documents and Communications relating to Your decision to become involved with and/or join each Global Climate Initiative.  This request includes, but is not limited to, the following:

a.     All Documents and Communications between You and any other member of the Net-Zero Banking Alliance Steering Group related to any aspect of the Net-Zero Banking Alliance, including but not limited to: (i) meeting agendas; (ii) meeting minutes; (iii) presentations of other Documents distributed for use at any meeting of Steering Group members; (iv) Documents and Communications relating to "ensur[ing] that the [Net-Zero Banking Alliance] strategy is embedded at the heart" of Your or their operations; and (v) Documents relating to any "strategic input" provided by You or any other member of the Steering Group.

b.     Communications between You and any Global Climate Initiative or any committee, board, group, or subgroup thereof; and

c.     Communications between You and any signatory or member of a Global Climate Initiative relating to the Global Climate Initiative, the Global Climate Initiative's mission, purpose, or activities, and/or any ESG Factors relating to any Covered Company.

3.     Produce all Documents and Communications related to interactions, engagements, or meetings between You and any Covered Company related to the Covered Company meeting any Environmental Goal(s).

4.     Produce all Documents and Communications between You and any other financial institution related to a Covered Company achieving any Environmental Goal.

5.     Produce all Documents and Communications between You and any Covered Company about how it may be difficult for that Covered Company to finance its activities without achieving specified Environmental Goals.

RECEIVED
November 2, 2022
Office of the Attorney General

6.     Produce all Documents and Communications related to any changes made by Covered Companies in response to the Communications, interactions, engagements, or meetings with You regarding achievement of Environmental Goals.

7.     Produce all Documents and Communications between You and any Covered Company related to ESG Factors or changes to the Covered Company's business practices in order to achieve Environmental Goals beyond what is required by applicable law, including but not limited to Documents sufficient to identify each such Covered Company.

8.     Produce all Documents and Communications related to any current, former, or prospective member or signatory any Global Climate Initiative relating to any Covered Company.

9.     Produce all Documents and Communications related to any analysis You conducted on the economic impact of transitioning Covered Companies to net zero by 2050, regardless of whether the analysis is limited to You, any specific Covered Company, or the country or global economy in general.

10.    Produce all Documents and Communications related to Research regarding the financial impact that following Your preferred course of action on environmental issues would have on any Covered Company, including but not limited to Documents sufficient to show all assumptions made in determining that financial impact, including but not limited to presumed government actions.

11.    Produce all Documents and Communications related to any condition of Your continuing to provide banking services to a Covered Company in which You required that the Covered Company make certain pledges or commitments related to any ESG Factor or Environmental Goal beyond that which was already required by applicable law.

12.    Produce all Documents and Communications related to each instance in which You declined to do business or chose to stop doing business with an entity due either directly or indirectly to Environmental Goals, ESG Factors, ESG Integration Practices, or previous commitments made to a Global Climate Initiative.

13.    Regarding each Covered Company, produce all Documents and Communications related to Your commitment as part of the Net-Zero Banking Alliance to "transition all operational and attributable GHG emissions from [Your] lending and investment portfolios to align with pathways to net-zero by mid-century, or sooner, including $CO_2$ emissions reaching net-zero at the latest by 2050."

14.    Regarding each Covered Company, produce all Documents and Communications related to Your commitment as part of the Net-Zero Banking Alliance to "facilitat[e] the necessary transition in the real economy through prioritizing client engagement, and offering products and services to support clients' transition."

RECEIVED
November 2, 2022
Office of the Attorney General

15.     Regarding each Covered Company, produce all Documents and Communications related to Your commitment as part of the Net-Zero Banking Alliance to "engag[e] on corporate and industry (financial and real economy) action, as well as public policies, to help support a net-zero transition of economic sectors."

16.     Produce all Documents and Communications related to Your models regarding ESG risks for Covered Companies, including but not limited to ESG risks related to the possibility of an international conflict or war, ESG risks related to energy security, and ESG risks related to an entity's relationship with authoritarian governments and potential sanctions resulting therefrom.

17.     Produce all Documents and Communications related to Your participation in the "Responsible Banking Academy" of the UNEP FI.

18.     Produce all Documents and Communications related to any target-setting guidelines or "Guidelines for Climate Change Target Setting."

19.     Provide Your retention policies in effect during the relevant time period relating to Documents and Communications.

20.     Provide all Documents identified, referred to, or consulted in any way in preparing Your response to any Request in this civil investigative demand.

**There is a continuing obligation to disclose pursuant to this CID.**

RECEIVED
November 2, 2022
Office of the Attorney General

**VERIFICATION**

I, _____, am employed by JP Morgan Chase & Co. as

a _____, and I am authorized to give this Verification on its

behalf. I execute this verification and state the following under penalty of perjury under the laws

of the Commonwealth of Kentucky.

I have read the JP Morgan's objections and responses to the Civil Investigative Demand

and Subpoena issued on _____, 2022, and state that the factual matters set forth in the

responses are true, correct, and complete to the best of my knowledge, information and belief.

Further, I certify that records and documents produced herein were made at or near the time

of the occurrence of the matters set forth by, or from information transmitted by, a person with

knowledge those matters, and were made and maintained as a regular practice in the course of the

regularly conducted business activities.

Signature:_____

STATE OF _____

COUNTY OF _____

Subscribed, sworn to and acknowledged before me by _____

(name), _____ (title), on behalf of _____ on

_____, _____.

My commission expires: _____

Signature: _____

Print Name: _____

Title: _____

RECEIVED
November 2, 2022
Office of the Attorney General



COMMONWEALTH OF KENTUCKY
**OFFICE OF THE ATTORNEY GENERAL**

DANIEL CAMERON
ATTORNEY GENERAL

1024 CAPITAL CENTER DRIVE
SUITE 200
FRANKFORT, KY 40601

## SUBPOENA AND CIVIL INVESTIGATIVE DEMAND
## IN RE INVESTIGATION OF:

**Net-Zero Banking Alliance**

**TO:**      **Citigroup Inc.**
            **388 Greenwich Street**
            **New York, NY 10013**


**SERVE:**   **CT Corporation System**
            **306 W Main Street**
            **Suite 512**
            **Frankfort, KY 40601**

Pursuant to the authority granted in KRS 367.240 and 367.250, the Attorney General of Kentucky, having reason to believe that a person has engaged in, is engaging in, or is about to engage in any act or practice declared to be unlawful by KRS 367.110 to 367.300; or having reason to believe it is in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in, is engaging in or is about to engage in, any act or practice declared to be unlawful by KRS 367.110 to 367.300; or both. hereby executes this Subpoena and Civil Investigative Demand, as follows:

____    That Citigroup Inc. furnish, under oath or affirmation, a report in writing setting forth the relevant facts and circumstances of which Citigroup Inc. has knowledge.

____    That Citigroup Inc. personally appear and testify at the following location on the following date and time: _____

**X**      That, under oath or affirmation, Citigroup Inc. answer the following requests and produce the following documents at the time and place above or, if blank, then by emailing them together with a completed sworn statement of authenticity and completeness of documents, by no later than twenty-one (21) days following service of this Subpoena and Civil Investigative Demand to: zach.richards@ky.gov and donald.haas@ky.gov or

**Office of the Attorney General of Kentucky**
**ATTN: Zachary Richards & Donald Haas**
**1024 Capital Center Drive**
**Suite 200**
**Frankfort, KY 40601**

RECEIVED
November 2, 2022
Office of the Attorney General

An Equal Opportunity Employer M/F/D

EXHIBIT 2

**Failure to comply with this Subpoena and Civil Investigative Demand may result in legal action pursuant to KRS 367.290.  Intentional concealment, falsification or destruction of documents may be punishable as a class A misdemeanor under KRS 367.990(3).  It is a class D felony to intentionally destroy, mutilate, conceal, remove, alter, or fabricate physical evidence believing that an official proceeding may be pending or instituted, pursuant to KRS 524.100.**

Date Issued: October 19, 2022

DANIEL CAMERON
ATTORNEY GENERAL

By: */s/ Zachary J Richards*
       Zachary J Richards
       Kentucky Office of the Attorney General
       1024 Capital Center Drive
       Frankfort, KY 40601
       502-696-5519
       Email: zach.richards@ky.gov

       */s/ Donald Haas*
       Donald Haas
       Kentucky Office of the Attorney General
       1024 Capital Office of the Attorney General
       1024 Capital Center Drive
       Frankfort, KY 40601
       502-696-5612
       Email: donald.haas@ky.gov

8354BA41-16C9-42D7-8129-5050CFBB8B86 : 000029 of 000103

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

COM : 000029 of 000101

Filed          22-CI-00842        10/31/2022        Amy Feldman, Franklin Circuit Clerk

## PROOF OF SERVICE OF SUBPOENA AND CIVIL INVESTIGATIVE DEMAND
### (to be completed by server)

Served via:        __x__        1. Certified mail, return receipt requested.

               _____        2. Personal delivery

               _____        3. Fax

Date of service:        _____

## **PERSON SERVED (for personal delivery)**

Name:        _____

Title:        _____

Description:        _____

_____

_____

_____

_____

_____

## **SERVED BY:**

Name:        _____

Title:        _____

Signature:        _____

RECEIVED
November 2, 2022
Office of the Attorney General

Filed          22-CI-00842        10/31/2022        Amy Feldman, Franklin Circuit Clerk

8354BA41-16C9-42D7-8129-5050CFBB8B86 : 000030 of 000103

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

COM : 000030 of 000101

## DEFINITIONS AND INSTRUCTIONS

### DEFINITIONS

As used in this Demand, the following terms shall have the meanings set forth herein:

"You" and "Your" means Citigroup Inc. and all agents, representatives, employees, independent contractors, attorneys, and other persons acting or purporting to act on its behalf, all subsidiary companies and affiliated companies, board of directors and advisory boards, and all joint projects, teams, or endeavors with any third party.

"All" and "any" shall each be construed to encompass the meanings of the words "all" and "any."

"And" and "or" shall be construed broadly to include both the disjunctive and the conjunctive, to be equivalent to "and/or," in order to render these Requests as broad as possible.

"Communication" means any expression, statement, conveyance, or dissemination of any words, thoughts, statements, ideas, or information, regardless of form, format, or kind. "Communication" includes but is not limited to oral or written communications of any kind, such as telephone conversations, discussions, meetings, notes, memoranda, letters, agreements, emails or other electronic communications, text messages, facsimiles, and other forms of written or oral exchange that are recorded in any way, including video recordings, audio recordings, written notes, or otherwise. Any Communication that also falls within the definition of "Document" shall constitute both a Document and a Communication for purposes of this civil investigative demand.

"Covered Company" means any entity to which You provide banking services of any kind that may be implicated by any commitment You made or intend to make to any Global Climate Initiative.

"Document" includes every "writing," "recording," and "photograph" as Federal Rule of Evidence 1001 defines those terms, as well as any "duplicate" of any writing, recording, or photograph. "Document" includes but is not limited to electronic documents, files, databases, and records, including but not limited to emails, voicemails, text messages, calendar appointments, instant messages, MMS messages, SMS messages, iMessages, computer files, spreadsheets, memoranda, books of accounts, ledgers, invoices, financial statements, purchase orders, receipts, canceled checks, charts, graphs, bills, facsimiles, and metadata. The term Document includes every draft of any other material that falls within the definition of Document.

"Environmental Goals" means achieving an outcome or changing behavior, including but not limited to changing information disclosure practices, related to any aspect of the environment or environmental policy. This definition includes but is not limited to goals that seek net zero greenhouse gas emissions standards or disclosures, compliance with the Paris Agreement (a.k.a. Paris Climate Agreement or Paris Climate Accords) or any agreement made at COP 26, the imposition of a carbon tax, and/or adoption of electric vehicles, or renewable energy, including wind and solar power.

RECEIVED
November 2, 2022
Office of the Attorney General

"ESG Factors" means factors relating to an entity's environmental, ecological, climatological, social, and/or governance attributes, risks, opportunities, impacts, or effects, whether present or future, actual or perceived, and whether or not priced into the entity's securities. This definition includes but is not limited to factors relating to an entity's environmental, ecological, climatological, or social impacts. This definition includes but is not limited to disclosable factors under SASB and/or TCFD guidelines.

"ESG Integration Practices" means the practice of incorporating ESG factors into Your decisions related to provision of banking services and/or engaging with Covered Companies on issues relating to ESG Factors. This definition includes but is not limited to the practice of leveraging Your position as a provider of banking services to an entity or entities to take actions advancing environmental, ecological, climatological, social, or corporate governance-related goals. This definition further includes, but is not limited to, the use of screens or filters based on environmental, ecological, climatological, social, or corporate governance criteria in determining whether to enter into a banking relationship with an entity or entities. "ESG Integration Practices" shall be construed to include all similar activities, including activities described as "responsible banking" and/or "sustainable banking."

"Global Climate Initiative" means any group, organization, or affiliation of private and/or public entities for the purpose of utilizing the financial system to reduce or eliminate greenhouse gas emissions or otherwise pursue environmental goals. Global Climate Initiatives include but are not limited to the Glasgow Financial Alliance for Net Zero and Net-Zero Banking Alliance.

"Identify", when used with respect to a Person or entity, means information sufficient to allow employees of the Attorney General to ascertain the current contact information (name, home or business address, telephone number, email), and if not a natural person, the current contact information for Your point of contact with the entity or facility to be identified, as well as the relationship of that Person or entity to You.

"Identify", when used with respect to a fact or event, means information sufficient to allow employees of the Attorney General to ascertain the fact or event with reasonable particularity, and to identify each Person believed to have knowledge with respect to the fact or event and each Document that refers or relates to the fact or event.

"Identify", when used with respect to a transaction, means to provide information sufficient to allow ascertainment of the banking and financial information of the sending and receiving parties, the method of payment or funds transfer, and the natural persons involved with the transfer or payment.

"Identify", with regard to a Communication, means to state with specificity the date of the Communication; the medium of communication; the location of the Communication; the name(s) and alias(es) of the Person(s) who made the Communication; and the name(s) and alias(es) of all Persons who were present when the statement was made, who received the Communication, who heard the Communication, or who came to know of the content of the Communication at a later time.

RECEIVED
November 2, 2022
Office of the Attorney General

"Person" means any natural person, corporation, proprietorship, partnership, association, firm, or entity of any kind.

"Relating to", "related to", and "relate to" mean to be relevant in any way to the subject matter in question, including without limitation all information that directly or indirectly contains, records, reflects, summarizes, evaluates, refers to, is pertinent to, indicates, comments upon, or discusses the subject matter; or that states the background of, or was the basis for, or that records, evaluates, comments, was referred to, relied upon, utilized, generated, transmitted, or received in arriving at any conclusion, opinion, estimate, position, decision, belief, policy, practice, course of business, course of conduct, procedure, or assertion concerning the subject matter.

"Research" means any and all research, analysis, assessment, study, report, audit, memorandum, or other investigation You conducted, drafted, created, commissioned, reviewed, received, or used.

## INSTRUCTIONS

1. Unless specifically stated otherwise, please restrict your search for all information and documents requested below to the period from January 1, 2015, to the present.

2. For each Demand for Information and Documents, you shall type the Demand and type Your corresponding response. You should identify—by Bates range, or by file names and locations—which Documents are responsive to each Demand. If You do not know the answer to a Demand, You shall identify in Your response the individual or business entity that has the answer to the Demand for Information. The document on which You type each Demand and Your corresponding response shall be executed by You before a Notary Public.

3. No demand seeks privileged information. If You believe that You have responsive materials that are privileged, please produce a privilege log that identifies each Document or Communication, the basis for withholding the Document, the reason withheld, and sufficient information to permit the Attorney General's Office to assess the applicability of the privilege and/or the work-product doctrine.

4. You are required to produce the following requested Documents and information, to the extent that they are within your possession, custody, and/or control.

RECEIVED
November 2, 2022
Office of the Attorney General

## DEMAND FOR INFORMATION AND DOCUMENTS

### DEMANDS FOR INFORMATION

1.      Identify all of Your divisions, groups, offices, or business segments whose responsibilities relate or used to relate to Your membership in the Net-Zero Banking Alliance or to Your ESG Integration Practices, and identify all executives, directors, officers, managers, supervisors, or other leaders of each division, group, office, or business segment.

2.      Identify each Global Climate Initiative with which You are affiliated and explain the reasons You chose to join such Global Climate Initiatives.

3.      For each Global Climate Initiative with which you are affiliated, identify who made the decision to join the Initiative, including any involvement or input from Your Board of Directors, investors, or Covered Companies in Your reasoning or decision.

4.      Describe Your involvement in each Global Climate Initiative in which You participate, including the date You first began participating, any promises, pledges, or other commitments You made to the Global Climate Initiative, or any actions You made or took pursuant to, or consistent with, such commitments, or Your initial or on-going participation, and the employee(s) responsible for managing Your relationship with each Global Climate Initiative.

5.      Describe Your involvement with the Steering Group of the Net-Zero Banking Alliance, including but not limited to identifying the "C-suite delegate" who represents You on the Steering Group at the "Principal level," the identities of other "C-suite delegates" from other members of the Steering Group, the identities of any other individuals who represented You to the Steering Group, and the dates, times, and locations of all Steering Group meetings.

6.      Identify the objectives and mission of the Net-Zero Banking Alliance and describe how You incorporated these objectives into Your operations.

7.      Describe the extent to which You have incorporated the Principles for Responsible Banking into Your operations, including but not limited to the extent to which You consulted with other Net-Zero Banking Alliance signatories as part of the incorporation process.

8.      Describe Your CEO's involvement as a member of the Glasgow Financial Alliance for Net Zero Principals Group, including but not limited to the dates, times, and locations of all Principals Group meetings, and any commitments, pledges, or other promises made by Your CEO, either for himself or on Your behalf, as part of his membership in the Principals Group.

9.      Describe the extent to which You, as a signatory to the Net-Zero Banking Alliance, have acted consistent with Your commitment to "facilitat[e] the necessary transition in the real economy through prioritizing client engagement and offering products and services to support clients' transition."

RECEIVED
November 2, 2022
Office of the Attorney General

10.     Describe the extent to which You, as a signatory to the Net-Zero Banking Alliance, have acted consistent with Your commitment to "engag[e] on corporate and industry (financial and real economy) action, as well as public policies, to help support a net-zero transition of economic sectors in line with science and giving consideration to associated social impacts."

11.     Describe the extent to which You, as a signatory to the Net-Zero Banking Alliance, have acted consistent with Your commitment to "support[] innovation, the near-term deployment of existing viable technologies, and scal[e] up the financing of credible, safe, and high-quality climate solutions that are compatible with other Sustainable Development Goals."

12.     In responding to Requests 8-11, please include any Communications with, or other actions taken by You, to engage with any nationally recognized statistical rating organization.

13.     Identify any target-setting guidelines and related "targets," including but not limited to any "2024 targets," "2030 targets," "2050 targets," or other "milestone targets," for Your operations, and identify how You set those targets, the sectors involved in those targets, and how Your targets are or will be aligned with Net-Zero Banking Alliance guidelines.

14.     Identify all entities to which You provide banking services that are part of the auto manufacturing industry, energy industry, or power generation industry.

15.     Identify any agreements You have reached with any other financial institution to coordinate action to achieve net-zero emissions targets, including but not limited to any commitments You have made as part of Your membership in any Global Climate Initiative of which other financial institutions are also members.

16.     Explain the basis of Your expectation, as a signatory to the Net-Zero Banking Alliance, that "governments will follow through on their own commitments to ensure that the objectives of the Paris Agreement are met," including but not limited to whether You believe the United States government will meet its commitments under the Paris Agreement, the legal mechanism by which it will meet these commitments, and any assumptions related to the structure and function of the government that underlie Your belief.

17.     Describe Your political projections underlying Your predictions regarding any mandates, or subsidies in the United States related to achieving environmental goals, including but not limited to the political composition of Congress and the executive branch, adopted legislation and administrative rules, the impact of any mandates or subsidies on energy prices and the impact of increasing energy prices on an incumbent party's control of Congress or the executive branch.

18.     Explain the manner in which You incorporated Your assumptions about energy transition and government mandates into Your general macroeconomic forecasts, and forecasts for Covered Companies.  For example, to the extent Your analyses of credit risk for a Covered Company presumed that the United States would limit or prohibit fossil fuel-based energy production by a certain date, please explain how You incorporated that assumption into Your analyses of the costs of energy, the impact of those costs on economic growth in general and the

RECEIVED
November 2, 2022
Office of the Attorney General

credit risk of other Covered Companies, and the financial performance of other U.S. companies affected by those changes.

19.     Identify the methodology and results of any analysis You conducted relating to the economic impact of transitioning all Covered Companies to net zero by 2050, including but not limited to the costs associated with the transition and any assumptions You made relating to any government action that might be taken to facilitate the transition such as new laws, regulations, mandates, or subsidies.

20.     Identify all entities with which You declined to do business or chose to stop doing business due either directly or indirectly to Environmental Goals, ESG Factors, or ESG Integration Practices and explain how the Environmental Goal, ESG Factor, or ESG Integration Practice informed Your decision.

21.     Identify any interactions or engagements You have had with a Covered Company related to the Covered Company's political, lobbying, or trade association activities, including any such activities related to environmental issues, reduction of greenhouse gas emissions, restrictions on fossil fuel use, or compliance with the Paris Agreement, and explain how any resulting change in a Covered Company's operations aligned with the economic interests of the Covered Company.

22.     In Your "Taskforce on Climate-Related Financial Disclosures Report 2021" ("2021 TCFD Report"), You identified "2030 financed emissions targets for [Your] Energy and Power loan portfolios."   Please explain: (a) How you chose those industries/sectors and set those numerical targets, including specifically identifying all Communications You had with any outside party, including but not limited to contractors or consultants, relating to the setting of those targets; (b) Why You did not set an emissions reduction target for auto manufacturing at this time; and (c) The mechanism by which You intend to align Your emissions reductions targets and methodology with NZBA guidelines.

23.     Identify all entities to which You provide banking services that are part of the Energy industry, as You used that term in the 2021 TCFD Report.

24.     Identify all entities to which You provide banking services that are part of the Power industry, as You used that term in Your 2021 TCFD Report.

25.     Identify all entities to which You provide banking services that are part of the auto manufacturing industry, as You used that term in Your 2021 TCFD Report.

26.     In Your 2021 TCFD Report, Jane Fraser, Your CEO, asserted that "[t]ackling climate change will require tremendous collaboration from everyone," including Your "industry peers."   Please explain what "collaboration" You have had with others in the financial services industry to "[t]ackl[e] climate change," including but not limited to identifying any Communications You have had with any Global Climate Initiative or member thereof.

27.     In Your 2021 TCFD Report, Jane Fraser, Your CEO, stated that to achieve Your emission reduction targets, You may have to pursue "client exit."   Please explain how You will

RECEIVED
November 2, 2022
Office of the Attorney General

determine whether "client exit" will be necessary, and whether and to what extent You have entered into any agreements with other financial services companies related to determining whether to "exit" from any given Covered Company, including but not limited to any commitment by You to consult with any other financial services company about such "exit."

28.     In Your 2021 TCFD Report, You noted that You participate in multiple Global Climate Initiatives to, in part, "promote … coordination across various climate efforts."  Please explain the extent to which Your participation in Global Climate Initiatives increases Your coordination with other financial services companies, including but not limited to the ways in which Your participation in NZBA "align[s]" Your "financing and investment portfolios" with those of other members.

29.     In Your 2021 TCFD Report, You asserted that there is an "urgent need for collective action to address the climate crisis."  Please explain all "collective action" that You have taken with other financial institutions, including but not limited to: (a) Identifying all Communications You have had with other financial institutions about taking "collective action to address the climate crisis"; and (b) Identifying all agreements, understandings, commitments, or contracts You have made or entered into with any other financial institution or Global Climate Initiative relating to the "collective action" You believe is needed to "address the climate crisis."

30.     In Your 2021 TCFD Report, You note Your intention to "[h]elp define net zero for the banking sector, including through [Your] membership in the Net-Zero Banking Alliance."  Please explain if it is Your intention that other members of the financial services industry conform to Your definition of "net zero," and Your processes for achieving net zero, and please identify all agreements, understandings, commitments, or contracts You have with any other financial institutions relating to the implementation of any Net Zero plan, framework, or goal.

31.     Identify all members of Your: (a) Global ESG Council; (b) Climate Risk Team; (c) Natural Resources & Clean Energy Transition Team; (d) Climate Risk Steering Group; (e) Climate Risk Working Group; (f) Net Zero Task Force; and (g) Global Sustainability Steering Committee.

32.     According to Your March 2022 "Environmental and Social Policy Framework," You "will not provide project-related financial services for … New thermal coal mines or significant expansion of existing mines; [or] New coal-fired power plants or expansions of existing plants."  Please explain how You decided to adopt this policy, including but not limited to identifying all Communications You had with any outside party, including but not limited to any Global Climate Initiative or member thereof, relating to the formulation of this policy.

33.     According to Your March 2022 "Environmental and Social Policy Framework," You "will not provide project-related financial services for … Oil and gas exploration, development and production in the Arctic Circle."  Please explain how You decided to adopt this policy, including but not limited to identifying all Communications You had with any outside party, including but not limited to any Global Climate Initiative or member thereof, relating to the formulation of this policy.

RECEIVED
November 2, 2022
Office of the Attorney General

Filed          22-CI-00842          10/21/2022          Amy Feldman, Franklin Circuit Clerk

## DEMANDS FOR DOCUMENTS

1. Produce all Documents and Communications related to Your decision to join each Global Climate Initiative of which You are a member, including but not limited to the Net-Zero Banking Alliance.

2. Produce all Documents and Communications related to any Global Climate Initiative or any committee, board, group, or subgroup thereof.

3. Produce all Documents and Communications between You and any other member of the Net-Zero Banking Alliance Steering Group related to any aspect of the Net-Zero Banking Alliance.

4. Produce all Documents and Communications between You and any signatory or member of a Global Climate Initiative related to any ESG factors involving any Covered Company.

5. Produce all Documents and Communications related to interactions, engagements, or meetings between You and any Covered Company related to the Covered Company meeting any Environmental Goal(s).

6. Produce all Documents and Communications between You and any other financial institution related to a Covered Company achieving any Environmental Goal.

7. Produce all Documents and Communications between You and any Covered Company about how it may be difficult for that Covered Company to finance its activities without achieving specified Environmental Goals.

8. Produce all Documents and Communications related to any changes made by Covered Companies in response to the Communications, interactions, engagements, or meetings with You regarding achievement of Environmental Goals.

9. Produce all Documents and Communications between You and any Covered Company related to ESG Factors or changes to the Covered Company's business practices in order to achieve Environmental Goals beyond what is required by applicable law, including but not limited to Documents sufficient to identify each such Covered Company.

10. Produce all Documents and Communications related to any current, former, or prospective member or signatory of any Global Climate Initiative relating to any Covered Company.

11. Produce all Documents and Communications related to any analysis You conducted on the economic impact of transitioning Covered Companies to net zero by 2050, regardless of whether the analysis is limited to You, any specific Covered Company, or the country or global economy in general.

RECEIVED
November 2, 2022
Office of the Attorney General

12.     Produce all Documents and Communications related to Research regarding the financial impact that following Your preferred course of action on environmental issues would have on any Covered Company, including but not limited to Documents sufficient to show all assumptions made in determining that financial impact, including but not limited to presumed government actions.

13.     Produce all Documents and Communications related to any condition of Your continuing to provide banking services to a Covered Company in which You required that the Covered Company make certain pledges or commitments related to any ESG Factor or Environmental Goal beyond that which was already required by applicable law.

14.     Produce all Documents and Communications related to each instance in which You declined to do business or chose to stop doing business with an entity due either directly or indirectly to Environmental Goals, ESG Factors, ESG Integration Practices, or previous commitments made to a Global Climate Initiative.

15.     Regarding each Covered Company, produce all Documents and Communications related to Your commitment as part of the Net-Zero Banking Alliance to "transition all operational and attributable GHG emissions from [Your] lending and investment portfolios to align with pathways to net-zero by mid-century, or sooner, including CO2 emissions reaching net-zero at the latest by 2050."

16.     Regarding each Covered Company, produce all Documents and Communications related to Your commitment as part of the Net-Zero Banking Alliance to "facilitat[e] the necessary transition in the real economy through prioritizing client engagement, and offering products and services to support clients' transition."

17.     Regarding each Covered Company, produce all Documents and Communications related to Your commitment as part of the Net-Zero Banking Alliance to "engag[e] on corporate and industry (financial and real economy) action, as well as public policies, to help support a net-zero transition of economic sectors."

18.     Produce all Documents and Communications related to Your models regarding ESG risks for Covered Companies, including but not limited to ESG risks related to the possibility of an international conflict or war, ESG risks related to energy security, and ESG risks related to an entity's relationship with authoritarian governments and potential sanctions resulting therefrom.

19.     Produce all Documents and Communications related to Your participation in the "Responsible Banking Academy" of the UNEP FI.

20.     Identify and produce all Documents and Communications related to any target-setting guidelines or "Guidelines for Climate Change Target Setting."

21.     Produce all Communications relating to establishing emissions or emissions intensity reductions targets between any of the following groups or committees and any Global Climate Initiative or member thereof: (a) Board of Directors Nomination, Governance and Public

RECEIVED
November 2, 2022
Office of the Attorney General

Affairs Committee; (b) Board of Directors Risk Management Committee; (c) Global ESG Council; (d) Climate Risk Team; (e) Natural Resources & Clean Energy Transition Team; (f) Climate Risk Steering Group; (g) Climate Risk Working Group; (h) Net Zero Task Force; and (i) Global Sustainability Steering Committee.

22.     Produce all Documents identified, referred to, or consulted in any way in preparing Your response to any Request in this civil investigative demand.

**There is a continuing obligation to disclose pursuant to this CID.**

RECEIVED
November 2, 2022
Office of the Attorney General

**VERIFICATION**

I, _____, am employed by JP Morgan Chase & Co. as

a  _____, and I am authorized to give this Verification on its

behalf.  I execute this verification and state the following under penalty of perjury under the laws

of the Commonwealth of Kentucky.

I have read the JP Morgan's objections and responses to the Civil Investigative Demand

and Subpoena issued on _____, 2022, and state that the factual matters set forth in the

responses are true, correct, and complete to the best of my knowledge, information and belief.

Further, I certify that records and documents produced herein were made at or near the time

of the occurrence of the matters set forth by, or from information transmitted by, a person with

knowledge those matters, and were made and maintained as a regular practice in the course of the

regularly conducted business activities.

Signature:_____

STATE OF _____

COUNTY OF _____

Subscribed, sworn to and acknowledged before me by _____

(name), _____ (title), on behalf of _____ on

_____, _____.

My commission expires: _____

Signature: _____

Print Name: _____

Title: _____

RECEIVED
November 2, 2022
Office of the Attorney General

Filed        22-CI-00842        10/21/2022        Amy Feldman, Franklin Circuit Clerk



COMMONWEALTH OF KENTUCKY
## OFFICE OF THE ATTORNEY GENERAL

DANIEL CAMERON
ATTORNEY GENERAL

1024 CAPITAL CENTER DRIVE
SUITE 200
FRANKFORT, KY 40601

## SUBPOENA AND CIVIL INVESTIGATIVE DEMAND
## IN RE INVESTIGATION OF:

### Net-Zero Banking Alliance

**TO:**       **The Goldman Sachs Group, Inc.**
              **200 West Street**
              **New York, NY 10282**

**SERVE:**    **CT Corporation System**
              **306 W Main St**
              **Suite 512**
              **Frankfort, KY 40601**

Pursuant to the authority granted in KRS 367.240 and 367.250, the Attorney General of Kentucky, having reason to believe that a person has engaged in, is engaging in, or is about to engage in any act or practice declared to be unlawful by KRS 367.110 to 367.300; or having reason to believe it is in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in, is engaging in or is about to engage in, any act or practice declared to be unlawful by KRS 367.110 to 367.300; or both, hereby executes this Subpoena and Civil Investigative Demand, as follows:

_____   That The Goldman Sachs Group, Inc. furnish, under oath or affirmation, a report in writing setting forth the relevant facts and circumstances of which The Goldman Sachs Group, Inc. has knowledge.

_____   That The Goldman Sachs Group, Inc. personally appear and testify at the following location on the following date and time: _____

**X**   That, under oath or affirmation, The Goldman Sachs Group, Inc. answer the following requests and produce the following documents at the time and place above or, if blank, then by emailing them together with a completed sworn statement of authenticity and completeness of documents, by no later than twenty-one (21) days following service of this Subpoena and Civil Investigative Demand to: zach.richards@ky.gov and donald.haas@ky.gov or

**Office of the Attorney General of Kentucky**
**ATTN: Zachary Richards & Donald Haas**
**1024 Capital Center Drive**

RECEIVED
November 2, 2022
Office of the Attorney General

EXHIBIT 3

An Equal Opportunity Employer M/F/D

Filed        22-CI-00842        10/21/2022        Amy Feldman, Franklin Circuit Clerk

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)        8358A41-16C9-42D7-8129-5050CFBB8B86 : 000042 of 000103

COM : 000042 of 000101

**Suite 200**
**Frankfort, KY 40601**


**Failure to comply with this Subpoena and Civil Investigative Demand may result in legal action pursuant to KRS 367.290. Intentional concealment, falsification or destruction of documents may be punishable as a class A misdemeanor under KRS 367.990(3). It is a class D felony to intentionally destroy, mutilate, conceal, remove, alter, or fabricate physical evidence believing that an official proceeding may be pending or instituted, pursuant to KRS 524.100.**


Date Issued: October 19, 2022


<div align="center">

DANIEL CAMERON
ATTORNEY GENERAL

</div>


By: */s/ Zachary J Richards*
  Zachary J Richards
  Kentucky Office of the Attorney General
  1024 Capital Center Drive
  Frankfort, KY 40601
  502-696-5519
  Email: zach.richards@ky.gov

  */s/ Donald Haas*
  Donald Haas
  Kentucky Office of the Attorney General
  1024 Capital Office of the Attorney General
  1024 Capital Center Drive
  Frankfort, KY 40601
  502-696-5612
  Email: donald.haas@ky.gov

RECEIVED
November 2, 2022
Office of the Attorney General

**PROOF OF SERVICE OF SUBPOENA AND CIVIL INVESTIGATIVE DEMAND**
**(to be completed by server)**

Served via:      __x__          1. Certified mail, return receipt requested.

                 _____          2. Personal delivery

                 _____          3. Fax


Date of service: _____


**PERSON SERVED (for personal delivery)**


Name: _____


Title: _____


Description: _____

_____

_____

_____

_____

_____


**SERVED BY:**

Name: _____


Title: _____


Signature: _____

RECEIVED
November 2, 2022
Office of the Attorney General

# DEFINITIONS AND INSTRUCTIONS

## DEFINITIONS

As used in this Demand, the following terms shall have the meanings set forth herein:

"You" and "Your" means The Goldman Sachs Group, Inc. and all agents, representatives, employees, independent contractors, attorneys, and other persons acting or purporting to act on its behalf, all subsidiary companies and affiliated companies, board of directors and advisory boards, and all joint projects, teams, or endeavors with any third party.

"All" and "any" shall each be construed to encompass the meanings of the words "all" and "any."

"And" and "or" shall be construed broadly to include both the disjunctive and the conjunctive, to be equivalent to "and/or," in order to render these Requests as broad as possible.

"Communication" means any expression, statement, conveyance, or dissemination of any words, thoughts, statements, ideas, or information, regardless of form, format, or kind. "Communication" includes but is not limited to oral or written communications of any kind, such as telephone conversations, discussions, meetings, notes, memoranda, letters, agreements, emails or other electronic communications, text messages, facsimiles, and other forms of written or oral exchange that are recorded in any way, including video recordings, audio recordings, written notes, or otherwise. Any Communication that also falls within the definition of "Document" shall constitute both a Document and a Communication for purposes of this civil investigative demand.

"Covered Company" means any entity to which You provide banking services of any kind that may be implicated by any commitment You made or intend to make to any Global Climate Initiative.

"Document" includes every "writing," "recording," and "photograph" as Federal Rule of Evidence 1001 defines those terms, as well as any "duplicate" of any writing, recording, or photograph. "Document" includes but is not limited to electronic documents, files, databases, and records, including but not limited to emails, voicemails, text messages, calendar appointments, instant messages, MMS messages, SMS messages, iMessages, computer files, spreadsheets, memoranda, books of accounts, ledgers, invoices, financial statements, purchase orders, receipts, canceled checks, charts, graphs, bills, facsimiles, and metadata. The term Document includes every draft of any other material that falls within the definition of Document.

"Environmental Goals" means achieving an outcome or changing behavior, including but not limited to changing information disclosure practices, related to any aspect of the environment or environmental policy. This definition includes but is not limited to goals that seek net zero greenhouse gas emissions standards or disclosures, compliance with the Paris Agreement (a.k.a. Paris Climate Agreement or Paris Climate Accords) or any agreement made at COP 26, the imposition of a carbon tax, and/or adoption of electric vehicles, or renewable energy, including wind and solar power.

RECEIVED
November 2, 2022
Office of the Attorney General

"ESG Factors" means factors relating to an entity's environmental, ecological, climatological, social, and/or governance attributes, risks, opportunities, impacts, or effects, whether present or future, actual or perceived, and whether or not priced into the entity's securities.  This definition includes but is not limited to factors relating to an entity's environmental, ecological, climatological, or social impacts.  This definition includes but is not limited to disclosable factors under SASB and/or TCFD guidelines.

"ESG Integration Practices" means the practice of incorporating ESG factors into Your decisions related to provision of banking services and/or engaging with Covered Companies on issues relating to ESG Factors.  This definition includes but is not limited to the practice of leveraging Your position as a provider of banking services to an entity or entities to take actions advancing environmental, ecological, climatological, social, or corporate governance-related goals.  This definition further includes, but is not limited to, the use of screens or filters based on environmental, ecological, climatological, social, or corporate governance criteria in determining whether to enter into a banking relationship with an entity or entities.  "ESG Integration Practices" shall be construed to include all similar activities, including activities described as "responsible banking" and/or "sustainable banking."

"Global Climate Initiative" means any group, organization, or affiliation of private and/or public entities for the purpose of utilizing the financial system to reduce or eliminate greenhouse gas emissions or otherwise pursue environmental goals.  Global Climate Initiatives include but are not limited to the Glasgow Financial Alliance for Net Zero and Net-Zero Banking Alliance.

"Identify", when used with respect to a Person or entity, means information sufficient to allow employees of the Attorney General to ascertain the current contact information (name, home or business address, telephone number, email), and if not a natural person, the current contact information for Your point of contact with the entity or facility to be identified, as well as the relationship of that Person or entity to You.

"Identify", when used with respect to a fact or event, means information sufficient to allow employees of the Attorney General to ascertain the fact or event with reasonable particularity, and to identify each Person believed to have knowledge with respect to the fact or event and each Document that refers or relates to the fact or event.

"Identify", when used with respect to a transaction, means to provide information sufficient to allow ascertainment of the banking and financial information of the sending and receiving parties, the method of payment or funds transfer, and the natural persons involved with the transfer or payment.

"Identify", with regard to a Communication, means to state with specificity the date of the Communication; the medium of communication; the location of the Communication; the name(s) and alias(es) of the Person(s) who made the Communication; and the name(s) and alias(es) of all Persons who were present when the statement was made, who received the Communication, who heard the Communication, or who came to know of the content of the Communication at a later time.

RECEIVED
November 2, 2022
Office of the Attorney General

"Person" means any natural person, corporation, proprietorship, partnership, association, firm, or entity of any kind.

"Relating to", "related to", and "relate to" mean to be relevant in any way to the subject matter in question, including without limitation all information that directly or indirectly contains, records, reflects, summarizes, evaluates, refers to, is pertinent to, indicates, comments upon, or discusses the subject matter; or that states the background of, or was the basis for, or that records, evaluates, comments, was referred to, relied upon, utilized, generated, transmitted, or received in arriving at any conclusion, opinion, estimate, position, decision, belief, policy, practice, course of business, course of conduct, procedure, or assertion concerning the subject matter.

"Research" means any and all research, analysis, assessment, study, report, audit, memorandum, or other investigation You conducted, drafted, created, commissioned, reviewed, received, or used.

### INSTRUCTIONS

1. Unless specifically stated otherwise, please restrict your search for all information and documents requested below to the period from January 1, 2015, to the present.

2. For each Demand for Information and Documents, you shall type the Demand and type Your corresponding response. You should identify—by Bates range, or by file names and locations—which Documents are responsive to each Demand. If You do not know the answer to a Demand, You shall identify in Your response the individual or business entity that has the answer to the Demand for Information. The document on which You type each Demand and Your corresponding response shall be executed by You before a Notary Public.

3. No demand seeks privileged information. If You believe that You have responsive materials that are privileged, please produce a privilege log that identifies each Document or Communication, the basis for withholding the Document, the reason withheld, and sufficient information to permit the Attorney General's Office to assess the applicability of the privilege and/or the work-product doctrine.

4. You are required to produce the following requested Documents and information, to the extent that they are within your possession, custody, and/or control.

RECEIVED
November 2, 2022
Office of the Attorney General

## DEMAND FOR INFORMATION AND DOCUMENTS

### DEMANDS FOR INFORMATION

1.      Identify all of Your divisions, groups, offices, or business segments whose responsibilities relate or used to relate to Your membership in the Net-Zero Banking Alliance or to Your ESG Integration Practices, and identify all executives, directors, officers, managers, supervisors, or other leaders of each division, group, office, or business segment.

2.      Identify each Global Climate Initiative with which You are affiliated and explain the reasons You chose to join such Global Climate Initiatives.

3.      For each Global Climate Initiative with which you are affiliated, identify who made the decision to join the Initiative, including any involvement or input from Your Board of Directors, investors, or Covered Companies in Your reasoning or decision.

4.      Describe Your involvement in each Global Climate Initiative in which You participate, including the date You first began participating, any promises, pledges, or other commitments You made to the Global Climate Initiative, or any actions You made or took pursuant to, or consistent with, such commitments, or Your initial or on-going participation, and the employee(s) responsible for managing Your relationship with each Global Climate Initiative.

5.      Identify the objectives and mission of the Net-Zero Banking Alliance and describe how You incorporated these objectives into Your operations.

6.      Describe the extent to which You have incorporated the Principles for Responsible Banking into Your operations, including but not limited to the extent to which You consulted with other Net-Zero Banking Alliance signatories as part of the incorporation process.

7.      Describe Your CEO's involvement as a member of the Glasgow Financial Alliance for Net Zero Principals Group, including but not limited to the dates, times, and locations of all Principals Group meetings, and any commitments, pledges, or other promises made by Your CEO, either for himself or on Your behalf, as part of his membership in the Principals Group.

8.      Describe the extent to which You, as a signatory to the Net-Zero Banking Alliance, have acted consistent with Your commitment to "facilitat[e] the necessary transition in the real economy through prioritizing client engagement and offering products and services to support clients' transition."

9.      Describe the extent to which You, as a signatory to the Net-Zero Banking Alliance, have acted consistent with Your commitment to "engag[e] on corporate and industry (financial and real economy) action, as well as public policies, to help support a net-zero transition of economic sectors in line with science and giving consideration to associated social impacts."

RECEIVED
November 2, 2022
Office of the Attorney General

10. Describe the extent to which You, as a signatory to the Net-Zero Banking Alliance, have acted consistent with Your commitment to "support[] innovation, the near-term deployment of existing viable technologies, and scal[e] up the financing of credible, safe, and high-quality climate solutions that are compatible with other Sustainable Development Goals."

11. In responding to Requests 7-10, please include any Communications with, or other actions taken by You, to engage with any nationally recognized statistical rating organization.

12. Identify any target-setting guidelines and related "targets," including but not limited to any "2024 targets," "2030 targets," "2050 targets," or other "milestone targets," for Your operations, and identify how You set those targets, the sectors involved in those targets, and how Your targets are or will be aligned with Net-Zero Banking Alliance guidelines.

13. Identify all entities to which You provide banking services that are part of the auto manufacturing industry, energy industry, or power generation industry.

14. Identify any agreements You have reached with any other financial institution to coordinate action to achieve net-zero emissions targets, including but not limited to any commitments You have made as part of Your membership in any Global Climate Initiative of which other financial institutions are also members.

15. Explain the basis of Your expectation, as a signatory to the Net-Zero Banking Alliance, that "governments will follow through on their own commitments to ensure that the objectives of the Paris Agreement are met," including but not limited to whether You believe the United States government will meet its commitments under the Paris Agreement, the legal mechanism by which it will meet these commitments, and any assumptions related to the structure and function of the government that underlie Your belief.

16. Describe Your political projections underlying Your predictions regarding any mandates, or subsidies in the United States related to achieving environmental goals, including but not limited to the political composition of Congress and the executive branch, adopted legislation and administrative rules, the impact of any mandates or subsidies on energy prices and the impact of increasing energy prices on an incumbent party's control of Congress or the executive branch.

17. Explain the manner in which You incorporated Your assumptions about energy transition and government mandates into Your general macroeconomic forecasts, and forecasts for Covered Companies. For example, to the extent Your analyses of credit risk for a Covered Company presumed that the United States would limit or prohibit fossil fuel-based energy production by a certain date, please explain how You incorporated that assumption into Your analyses of the costs of energy, the impact of those costs on economic growth in general and the credit risk of other Covered Companies, and the financial performance of other U.S. companies affected by those changes.

18. Identify the methodology and results of any analysis You conducted relating to the economic impact of transitioning all Covered Companies to zero by 2050, including but not limited to the costs associated with the transition and any assumptions You made relating to any

RECEIVED
November 2, 2022
Office of the Attorney General

government action that might be taken to facilitate the transition such as new laws, regulations, mandates, or subsidies.

19.     Identify all entities with which You declined to do business or chose to stop doing business due either directly or indirectly to Environmental Goals, ESG Factors, or ESG Integration Practices and explain how the Environmental Goal, ESG Factor, or ESG Integration Practice informed Your decision.

20.     Identify any interactions or engagements You have had with a Covered Company related to the Covered Company's political, lobbying, or trade association activities, including any such activities related to environmental issues, reduction of greenhouse gas emissions, restrictions on fossil fuel use, or compliance with the Paris Agreement, and explain how any resulting change in a Covered Company's operations aligned with the economic interests of the Covered Company.

21.     In Your "Taskforce on Climate-Related Financial Disclosures Report 2021 ("2021 TCFD Report"), You identified "targets for 2030 across three sectors: Oil & Gas, Power and Auto Manufacturing."  Please explain: (a) How You chose those industries/sectors and set those numerical targets, including specifically identifying all Communications You had with any outside party, including but not limited to contractors or consultants, relating to the setting of those targets. For the avoidance of doubt, Your response should include all Communications that Oliver Wyman or other consultants had with outside parties such as Global Climate Initiatives or members thereof; and (b) The mechanism by which You intend to align Your emissions reductions targets and methodology with NZBA guidelines.

22.     Identify all entities to which You provide banking services that are part of the Oil & Gas industry, as You used that term in the 2021 TCFD Report.

23.     Identify all entities to which You provide banking services that are part of the Power industry, as You used that term in the 2021 TCFD Report.

24.     Identify all entities to which You provide banking services that are part of the Auto Manufacturing industry, as You used that term in Your 2021 TCFD Report.

25.     In Your 2021 TCFD Report, You noted that You "collaborate with … peers" to, among other things, "set[] business related climate goals."  Please explain the nature and extent to which You collaborated with any financial institution or any Global Climate  Initiative in setting any climate-related goal, including but not limited to setting any Environmental Goal for any Covered Company.

26.     In Your 2021 TCFD Report, You asserted that You "partner with industry groups and coalitions to … spur progress toward net zero … and advance a globally-coordinated approach to climate transition policy."  Please identify and explain all partnerships You have entered into with other financial institutions, including but not limited to: (a) Identifying all Communications You have had with other financial institutions about taking a "globally-coordinated approach to climate transition policy;" and (b) Identifying all agreements, understandings, commitments, or contracts You have made or entered into with any other financial institution or Global Climate

RECEIVED
November 2, 2022
Office of the Attorney General

Initiative to "spur progress toward net zero" or "advance a globally-coordinated approach to climate transition policy."

27.     Identify all members of Your: (a) Enterprise Risk Committee; (b) Firmwide Climate Steering Group; (c) Investment Banking Sustainability Council; (d) Asset Management Sustainability Council; (e) Global Markets Sustainability Council; (f) Consumer & Wealth Management Sustainability Council; (g) Risk Division; (h) Sustainable Finance Group; and (i) Corporate & Workplace Solutions.

28.     According to the "Goldman Sachs Environmental Policy Framework," You "will decline any financings that directly support the development of new coal fired power generation" unless it meets certain criteria, You will "decline the opportunity" to participate in "transactions directly financing new thermal coal mine development," and You "will phase out [Your] financing of thermal coal mining companies that do not have a diversification strategy." Please explain how You decided to adopt these policies, including but not limited to identifying all Communications You had with any outside party, including but not limited to any Global Climate Initiative or member thereof, related to the formulation of these policies.

29.     According to the "Goldman Sachs Environmental Policy Framework," You "will decline any financing transaction that directly supports new upstream Arctic oil exploration or development. This includes but is not limited to the Arctic National Wildlife Refuge." Please explain how you decided to adopt this policy, including but not limited to identifying all Communications You had with any outside party, including but not limited to any Global Climate Initiative or member thereof, relating to the formulation of this policy.

## DEMANDS FOR DOCUMENTS

1.     Produce all Documents and Communications related to Your decision to join each Global Climate Initiative of which You are a member, including but not limited to the Net-Zero Banking Alliance.

2.     Produce all Documents and Communications related to any Global Climate Initiative or any committee, board, group, or subgroup thereof.

3.     Produce all Documents and Communications between You and any member of the Net-Zero Banking Alliance Steering Group related to any aspect of the Net-Zero Banking Alliance.

4.     Produce all Documents and Communications between You and any signatory or member of a Global Climate Initiative related to any ESG factors involving any Covered Company.

5.     Produce all Documents and Communications related to interactions, engagements, or meetings between You and any Covered Company related to the Covered Company meeting any Environmental Goal(s).

RECEIVED
November 2, 2022
Office of the Attorney General

6.      Produce all Documents and Communications between You and any other financial institution related to a Covered Company achieving any Environmental Goal.

7.      Produce all Documents and Communications between You and any Covered Company about how it may be difficult for that Covered Company to finance its activities without achieving specified Environmental Goals.

8.      Produce all Documents and Communications related to any changes made by Covered Companies in response to the Communications, interactions, engagements, or meetings with You regarding achievement of Environmental Goals.

9.      Produce all Documents and Communications between You and any Covered Company related to ESG Factors or changes to the Covered Company's business practices in order to achieve Environmental Goals beyond what is required by applicable law, including but not limited to Documents sufficient to identify each such Covered Company.

10.      Produce all Documents and Communications related to any current, former, or prospective member or signatory of any Global Climate Initiative relating to any Covered Company.

11.      Produce all Documents and Communications related to any analysis You conducted on the economic impact of transitioning Covered Companies to net zero by 2050, regardless of whether the analysis is limited to You, any specific Covered Company, or the country or global economy in general.

12.      Produce all Documents and Communications related to Research regarding the financial impact that following Your preferred course of action on environmental issues would have on any Covered Company, including but not limited to Documents sufficient to show all assumptions made in determining that financial impact, including but not limited to presumed government actions.

13.      Produce all Documents and Communications related to any condition of Your continuing to provide banking services to a Covered Company in which You required that the Covered Company make certain pledges or commitments related to any ESG Factor or Environmental Goal beyond that which was already required by applicable law.

14.      Produce all Documents and Communications related to each instance in which You declined to do business or chose to stop doing business with an entity due either directly or indirectly to Environmental Goals, ESG Factors, ESG Integration Practices, or previous commitments made to a Global Climate Initiative.

15.      Regarding each Covered Company, produce all Documents and Communications related to Your commitment as part of the Net-Zero Banking Alliance to "transition all operational and attributable GHG emissions from [Your] lending and investment portfolios to align with pathways to net-zero by mid-century, or sooner, including CO2 emissions reaching net-zero at the latest by 2050."

RECEIVED
November 2, 2022
Office of the Attorney General

16.     Regarding each Covered Company, produce all Documents and Communications related to Your commitment as part of the Net-Zero Banking Alliance to "facilitat[e] the necessary transition in the real economy through prioritizing client engagement, and offering products and services to support clients' transition."

17.     Regarding each Covered Company, produce all Documents and Communications related to Your commitment as part of the Net-Zero Banking Alliance to "engag[e] on corporate and industry (financial and real economy) action, as well as public policies, to help support a net-zero transition of economic sectors."

18.     Produce all Documents and Communications related to Your models regarding ESG risks for Covered Companies, including but not limited to ESG risks related to the possibility of an international conflict or war, ESG risks related to energy security, and ESG risks related to an entity's relationship with authoritarian governments and potential sanctions resulting therefrom.

19.     Produce all Documents and Communications related to Your participation in the "Responsible Banking Academy" of the UNEP FI.

20.     Identify and produce all Documents and Communications related to any target-setting guidelines or "Guidelines for Climate Change Target Setting."

21.     Produce all Communications relating to establishing emissions or emissions intensity reduction targets between any of the following groups or committees and any Global Climate Initiative or member thereof: (a) Board of Directors Public Responsibilities Committee; (b) Board of Directors Risk Committee; (c) Enterprise Risk Committee; (d) Firmwide Climate Steering Group; (e) Investment Banking Sustainability Council; (f) Asset Management Sustainability Council; (g) Global Markets Sustainability Council; (h) Consumer & Wealth Management Sustainability Council; (i) Risk Division; (j) Sustainable Finance Group; and (k) Corporate & Workplace Solutions.

22.     Produce all Documents identified, referred to, or consulted in any way in preparing Your response to any Request in this civil investigative demand.

**There is a continuing obligation to disclose pursuant to this CID.**

RECEIVED
November 2, 2022
Office of the Attorney General

**VERIFICATION**

I, _____, am employed by JP Morgan Chase & Co. as

a _____, and I am authorized to give this Verification on its

behalf.  I execute this verification and state the following under penalty of perjury under the laws

of the Commonwealth of Kentucky.

I have read the JP Morgan's objections and responses to the Civil Investigative Demand

and Subpoena issued on _____, 2022, and state that the factual matters set forth in the

responses are true, correct, and complete to the best of my knowledge, information and belief.

Further, I certify that records and documents produced herein were made at or near the time

of the occurrence of the matters set forth by, or from information transmitted by, a person with

knowledge those matters, and were made and maintained as a regular practice in the course of the

regularly conducted business activities.

Signature: _____

STATE OF _____

COUNTY OF _____

Subscribed, sworn to and acknowledged before me by _____

(name), _____ (title), on behalf of _____ on

_____, _____.

My commission expires: _____

Signature: _____

Print Name: _____

Title: _____

RECEIVED
November 2, 2022
Office of the Attorney General

Filed          22-CI-00842          10/21/2022          Amy Feldman, Franklin Circuit Clerk



COMMONWEALTH OF KENTUCKY
## OFFICE OF THE ATTORNEY GENERAL

DANIEL CAMERON
ATTORNEY GENERAL

1024 CAPITAL CENTER DRIVE
SUITE 200
FRANKFORT, KY 40601

## SUBPOENA AND CIVIL INVESTIGATIVE DEMAND
## IN RE INVESTIGATION OF:

**Net-Zero Banking Alliance**

TO:        **JPMorgan Chase & Co.**
                **383 Madison Avenue**
                **New York, NY 10170**

SERVE:     **CT Corporation System**
                **306 W Main St**
                **Suite 512**
                **Frankfort, KY 40601**

       Pursuant to the authority granted in KRS 367.240 and 367.250, the Attorney General of Kentucky, having reason to believe that a person has engaged in, is engaging in, or is about to engage in any act or practice declared to be unlawful by KRS 367.110 to 367.300; or having reason to believe it is in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in, is engaging in or is about to engage in, any act or practice declared to be unlawful by KRS 267.110 to 367.300; or both, hereby executes this Subpoena and Civil Investigative Demand, as follows:

_____    That JPMorgan Chase & Co. furnish, under oath or affirmation, a report in writing setting forth the relevant facts and circumstances of which JPMorgan Chase & Co. has knowledge.

_____    That JPMorgan Chase & Co. personally appear and testify at the following location on the following date and time: _____

**X**    That, under oath or affirmation, JPMorgan Chase & Co. answer the following requests and produce the following documents at the time and place above or, if blank, then by emailing them together with a completed sworn statement of authenticity and completeness of documents, by no later than twenty-one (21) days following service of this Subpoena and Civil Investigative Demand to: zach.richards@ky.gov and donald.haas@ky.gov or

**Office of the Attorney General of Kentucky**
**ATTN: Zachary Richards & Donald Haas**
**1024 Capital Center Drive**
**Suite 200**

RECEIVED
November 2, 2022
Office of the Attorney General

EXHIBIT 4

An Equal Opportunity Employer M/F/D

**Frankfort, KY 40601**


**Failure to comply with this Subpoena and Civil Investigative Demand may result in legal action pursuant to KRS 367.290. Intentional concealment, falsification or destruction of documents may be punishable as a class A misdemeanor under KRS 367.990(3). It is a class D felony to intentionally destroy, mutilate, conceal, remove, alter, or fabricate physical evidence believing that an official proceeding may be pending or instituted, pursuant to KRS 524.100.**


Date Issued: October 19, 2022


<div align="center">

DANIEL CAMERON
ATTORNEY GENERAL


By: */s/ Zachary J Richards*
  Zachary J Richards
  Kentucky Office of the Attorney General
  1024 Capital Center Drive
  Frankfort, KY 40601
  502-696-5519
  Email: zach.richards@ky.gov

  */s/ Donald Haas*
  Donald Haas
  Kentucky Office of the Attorney General
  1024 Capital Office of the Attorney General
  1024 Capital Center Drive
  Frankfort, KY 40601
  502-696-5612
  Email: donald.haas@ky.gov

</div>

RECEIVED
November 2, 2022
Office of the Attorney General

Page 2 of 4

**PROOF OF SERVICE OF SUBPOENA AND CIVIL INVESTIGATIVE DEMAND**
**(to be completed by server)**

Served via: _____x_____    1. Certified mail, return receipt requested.

_____    2. Personal delivery

_____    3. Fax

Date of service: _____

**PERSON SERVED (for personal delivery)**

Name: _____

Title: _____

Description: _____

_____

_____

_____

_____

_____

**SERVED BY:**

Name: _____

Title: _____

Signature: _____

RECEIVED
November 2, 2022
Office of the Attorney General

Filed        22-CI-00842        10/31/2022        Amy Feldman, Franklin Circuit Clerk

8354BA41-16C9-42D7-8129-5050CFBB8B86 : 000057 of 000103

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

COM : 000057 of 000101

## DEFINITIONS AND INSTRUCTIONS

### DEFINITIONS

As used herein:

As used in this Demand, the following terms shall have the meanings set forth herein:

"You" and "Your" means JPMorgan Chase & Co. and all agents, representatives, employees, independent contractors, attorneys, and other persons acting or purporting to act on its behalf, all subsidiary companies and affiliated companies, board of directors and advisory boards, and all joint projects, teams, or endeavors with any third party.

"All" and "any" shall each be construed to encompass the meanings of the words "all" and "any."

"And" and "or" shall be construed broadly to include both the disjunctive and the conjunctive, to be equivalent to "and/or," in order to render these Requests as broad as possible.

"Communication" means any expression, statement, conveyance, or dissemination of any words, thoughts, statements, ideas, or information, regardless of form, format, or kind. "Communication" includes but is not limited to oral or written communications of any kind, such as telephone conversations, discussions, meetings, notes, memoranda, letters, agreements, emails or other electronic communications, text messages, facsimiles, and other forms of written or oral exchange that are recorded in any way, including video recordings, audio recordings, written notes, or otherwise. Any Communication that also falls within the definition of "Document" shall constitute both a Document and a Communication for purposes of this civil investigative demand.

"Covered Company" means any entity to which You provide banking services of any kind that may be implicated by any commitment You made or intend to make to any Global Climate Initiative.

"Document" includes every "writing," "recording," and "photograph" as Federal Rule of Evidence 1001 defines those terms, as well as any "duplicate" of any writing, recording, or photograph. "Document" includes but is not limited to electronic documents, files, databases, and records, including but not limited to emails, voicemails, text messages, calendar appointments, instant messages, MMS messages, SMS messages, iMessages, computer files, spreadsheets, memoranda, books of accounts, ledgers, invoices, financial statements, purchase orders, receipts, canceled checks, charts, graphs, bills, facsimiles, and metadata. The term Document includes every draft of any other material that falls within the definition of Document.

"Environmental Goals" means achieving an outcome or changing behavior, including but not limited to changing information disclosure practices, related to any aspect of the environment or environmental policy. This definition includes but is not limited to goals that seek net zero greenhouse gas emissions standards or disclosures, compliance with the Paris Agreement (a.k.a. Paris Climate Agreement or Paris Climate Accords) or any agreement made at COP 26, the

RECEIVED
November 2, 2022
Office of the Attorney General

imposition of a carbon tax, and/or adoption of electric vehicles, or renewable energy, including wind and solar power.

"ESG Factors" means factors relating to an entity's environmental, ecological, climatological, social, and/or governance attributes, risks, opportunities, impacts, or effects, whether present or future, actual or perceived, and whether or not priced into the entity's securities. This definition includes but is not limited to factors relating to an entity's environmental, ecological, climatological, or social impacts. This definition includes but is not limited to disclosable factors under SASB and/or TCFD guidelines.

"ESG Integration Practices" means the practice of incorporating ESG factors into Your decisions related to provision of banking services and/or engaging with Covered Companies on issues relating to ESG Factors. This definition includes but is not limited to the practice of leveraging Your position as a provider of banking services to an entity or entities to take actions advancing environmental, ecological, climatological, social, or corporate governance-related goals. This definition further includes, but is not limited to, the use of screens or filters based on environmental, ecological, climatological, social, or corporate governance criteria in determining whether to enter into a banking relationship with an entity or entities. "ESG Integration Practices" shall be construed to include all similar activities, including activities described as "responsible banking" and/or "sustainable banking."

"Global Climate Initiative" means any group, organization, or affiliation of private and/or public entities for the purpose of utilizing the financial system to reduce or eliminate greenhouse gas emissions or otherwise pursue environmental goals. Global Climate Initiatives include but are not limited to the Glasgow Financial Alliance for Net Zero and Net-Zero Banking Alliance.

"Identify", when used with respect to a Person or entity, means information sufficient to allow employees of the Attorney General to ascertain the current contact information (name, home or business address, telephone number, email), and if not a natural person, the current contact information for Your point of contact with the entity or facility to be identified, as well as the relationship of that Person or entity to You.

"Identify", when used with respect to a fact or event, means information sufficient to allow employees of the Attorney General to ascertain the fact or event with reasonable particularity, and to identify each Person believed to have knowledge with respect to the fact or event and each Document that refers or relates to the fact or event.

"Identify", when used with respect to a transaction, means to provide information sufficient to allow ascertainment of the banking and financial information of the sending and receiving parties, the method of payment or funds transfer, and the natural persons involved with the transfer or payment.

"Identify", with regard to a Communication, means to state with specificity the date of the Communication; the medium of communication; the location of the Communication; the name(s) and alias(es) of the Person(s) who made the Communication; and the name(s) and alias(es) of all Persons who were present when the statement was made, who received the Communication, who

RECEIVED
November 2, 2022
Office of the Attorney General

heard the Communication, or who came to know of the content of the Communication at a later time.

"Person" means any natural person, corporation, proprietorship, partnership, association, firm, or entity of any kind.

"Relating to", "related to", and "relate to" mean to be relevant in any way to the subject matter in question, including without limitation all information that directly or indirectly contains, records, reflects, summarizes, evaluates, refers to, is pertinent to, indicates, comments upon, or discusses the subject matter; or that states the background of, or was the basis for, or that records, evaluates, comments, was referred to, relied upon, utilized, generated, transmitted, or received in arriving at any conclusion, opinion, estimate, position, decision, belief, policy, practice, course of business, course of conduct, procedure, or assertion concerning the subject matter.

"Research" means any and all research, analysis, assessment, study, report, audit, memorandum, or other investigation You conducted, drafted, created, commissioned, reviewed, received, or used.

## INSTRUCTIONS

1. Unless specifically stated otherwise, please restrict your search for all information and documents requested below to the period from January 1, 2015, to the present.

2. For each Demand for Information and Documents, you shall type the Demand and type Your corresponding response.  You should identify—by Bates range, or by file names and locations—which Documents are responsive to each Demand.  If You do not know the answer to a Demand, You shall identify in Your response the individual or business entity that has the answer to the Demand for Information. The document on which You type each Demand and Your corresponding response shall be executed by You before a Notary Public.

3. No demand seeks privileged information.  If You believe that You have responsive materials that are privileged, please produce a privilege log that identifies each Document or Communication, the basis for withholding the Document, the reason withheld, and sufficient information to permit the Attorney General's Office to assess the applicability of the privilege and/or the work-product doctrine.

4. You are required to produce the following requested Documents and information, to the extent that they are within your possession, custody, and/or control.

RECEIVED
November 2, 2022
Office of the Attorney General

# DEMAND FOR INFORMATION AND DOCUMENTS

## DEMANDS FOR INFORMATION

1.  Identify all of Your divisions, groups, offices, or business segments whose responsibilities relate or used to relate to Your membership in the Net-Zero Banking Alliance or to Your ESG Integration Practices, and identify all executives, directors, officers, managers, supervisors, or other leaders of each division, group, office, or business segment.

2.  Identify each Global Climate Initiative with which You are affiliated and explain the reasons You chose to join such Global Climate Initiatives.

3.  For each Global Climate Initiative with which you are affiliated, identify who made the decision to join the Initiative, including any involvement or input from Your Board of Directors, investors, or Covered Companies in Your reasoning or decision.

4.  Describe Your involvement in each Global Climate Initiative in which You participate, including the date You first began participating, any promises, pledges, or other commitments You made to the Global Climate Initiative, or any actions You made or took pursuant to, or consistent with, such commitments, or Your initial or on-going participation, and the employee(s) responsible for managing Your relationship with each Global Climate Initiative.

5.  Identify the objectives and mission of the Net-Zero Banking Alliance and describe how You incorporated these objectives into Your operations.

6.  Describe the extent to which You have incorporated the Principles for Responsible Banking into Your operations, including but not limited to the extent to which You consulted with other Net-Zero Banking Alliance signatories as part of the incorporation process.

7.  Describe Your CEO's involvement as a member of the Glasgow Financial Alliance for Net Zero Principals Group, including but not limited to the dates, times, and locations of all Principals Group meetings, and any commitments, pledges, or other promises made by Your CEO, either for himself or on Your behalf, as part of his membership in the Principals Group.

8.  Describe the extent to which You, as a signatory to the Net-Zero Banking Alliance, have acted consistent with Your commitment to "facilitat[e] the necessary transition in the real economy through prioritizing client engagement and offering products and services to support clients' transition."

9.  Describe the extent to which You, as a signatory to the Net-Zero Banking Alliance, have acted consistent with Your commitment to "engag[e] on corporate and industry (financial and real economy) action, as well as public policies, to help support a net-zero transition of economic sectors in line with science and giving consideration to associated social impacts."

10.  Describe the extent to which You, as a signatory to the Net-Zero Banking Alliance, have acted consistent with Your commitment to "support[] innovation, the near-term deployment

RECEIVED
November 2, 2022
Office of the Attorney General

of existing viable technologies, and scal[e] up the financing of credible, safe, and high-quality climate solutions that are compatible with other Sustainable Development Goals."

11.     In responding to Requests 7-10, please include any Communications with, or other actions taken by You, to engage with any nationally recognized statistical rating organization.

12.     Identify any target-setting guidelines and related "targets," including but not limited to any "2024 targets," "2030 targets," "2050 targets," or other "milestone targets," for Your operations, and identify how You set those targets, the sectors involved in those targets, and how Your targets are or will be aligned with Net-Zero Banking Alliance guidelines.

13.     Identify all entities to which You provide banking services that are part of the auto manufacturing industry, energy industry, or power generation industry.

14.     Identify any agreements You have reached with any other financial institution to coordinate action to achieve net-zero emissions targets, including but not limited to any commitments You have made as part of Your membership in any Global Climate Initiative of which other financial institutions are also members.

15.     Explain the basis of Your expectation, as a signatory to the Net-Zero Banking Alliance, that "governments will follow through on their own commitments to ensure that the objectives of the Paris Agreement are met," including but not limited to whether You believe the United States government will meet its commitments under the Paris Agreement, the legal mechanism by which it will meet these commitments, and any assumptions related to the structure and function of the government that underlie Your belief.

16.     Describe Your political projections underlying Your predictions regarding any mandates, or subsidies in the United States related to achieving environmental goals, including but not limited to the political composition of Congress and the executive branch, adopted legislation and administrative rules, the impact of any mandates or subsidies on energy prices and the impact of increasing energy prices on an incumbent party's control of Congress or the executive branch.

17.     Explain the manner in which You incorporated Your assumptions about energy transition and government mandates into Your general macroeconomic forecasts, and forecasts for Covered Companies.  For example, to the extent Your analyses of credit risk for a Covered Company presumed that the United States would limit or prohibit fossil fuel-based energy production by a certain date, please explain how You incorporated that assumption into Your analyses of the costs of energy, the impact of those costs on economic growth in general and the credit risk of other Covered Companies, and the financial performance of other U.S. companies affected by those changes.

18.     Identify the methodology and results of any analysis You conducted relating to the economic impact of transitioning all Covered Companies to net zero by 2050, including but not limited to the costs associated with the transition and any assumptions You made relating to any government action that might be taken to facilitate the transition such as new laws, regulations, mandates, or subsidies.

RECEIVED
November 2, 2022
Office of the Attorney General

19.     Identify all entities with which You declined to do business or chose to stop doing business due either directly or indirectly to Environmental Goals, ESG Factors, or ESG Integration Practices and explain how the Environmental Goal, ESG Factor, or ESG Integration Practice informed Your decision.

20.     Identify any interactions or engagements You have had with a Covered Company related to the Covered Company's political, lobbying, or trade association activities, including any such activities related to environmental issues, reduction of greenhouse gas emissions, restrictions on fossil fuel use, or compliance with the Paris Agreement, and explain how any resulting change in a Covered Company's operations aligned with the economic interests of the Covered Company.

21.     In Your May 2021 "Carbon Compass" methodology, You identified "targets to reduce the carbon intensity" of Your "global Oil & Gas, Electric Power and Auto Manufacturing portfolios," and further indicated that "[o]ver time, [You] intend to expand "Carbon Compass" to address additional sectors, and [You] aim to extend and improve its application in accordance with best practices and improved data availability."  Please explain: (a) How You chose those industries/sectors and set those numerical targets, including specifically identifying all Communications You had with any outside party, including but not limited to contractors or consultants, relating to the setting of those targets.  For the avoidance of doubt, Your response should include all communications ERM or other consultants had with outside parties such as Global Climate Initiatives or members thereof; (b) What other sectors You plan to expand "Carbon Compass" to cover; and (c) The mechanism by which You will "extend and improve" "Carbon Compass," including whether You intend to align "Carbon Compass" with NZBA guidelines.

22.     In Your April 2021 "Carbon Compass" methodology, You note that "Reducing greenhouse gas (GHG) emissions…will require collective ambition and action across the public and private sectors."  Please describe what steps You have taken to get "collective…action" toward the goal of "reducing greenhouse gas (GHG) emissions," including but not limited to: (a) Any agreements You have reached with any other financial institution to coordinate action to reduce emissions, including but not limited to any commitments You have made as part of Your membership in any Global Climate Initiative of which other financial institutions are also members; (b) Any Communications You have had with any other financial institution relating to a Covered Company achieving any Environmental Goal; and (c) Any Communications You have had with any Covered Company about how it will be difficult for that Covered Company to finance its activities without achieving specified Environmental Goals.

23.     Explain the role Your Center for Carbon Transition ("CCT") played in establishing Your emissions intensity reduction targets, as noted in Your 2021 Environmental, Social & Governance Report, including but not limited to identifying all Communications between the CCT and any Global Climate Initiative or any of Your employees who interacted with any Global Climate Initiative on Your behalf.

24.     Identify all entities to which You provide banking services that are part of the auto manufacturing industry, as You used that term in Your May 2021 "Carbon Compass" methodology.

RECEIVED
November 2, 2022
Office of the Attorney General

Page 9 of 14

25.     Identify all entities to which You provide banking services that are part of the oil & gas industry, as You used that term in Your May 2021 "Carbon Compass" methodology.

26.     Identify all entities to which You provide banking services that are part of the electric power industry, as You used that term in Your May 2021 "Carbon Compass" methodology.

27.     In Your May 2021 "Carbon Compass" methodology, You note that "if needed, [You] will also consider reallocating capital so that [Your] global sector portfolios in [Your] chosen sectors are aligned with the goals of the Paris Agreement."  Please explain how You will determine whether capital reallocation will be necessary, and whether and to what extent You have entered into any agreements with other financial services companies related to determining whether to reallocate capital away from any given Covered Company, including but not limited to any commitment by You to consult with any other financial services company about such reallocation.

28.     According to Your October 8, 2021 "Environmental and Social Policy Framework," You "will not provide project financing or other forms of asset-specific financing where the Proceeds will be used to develop a new greenfield coal mine," nor will You "provide lending, capital markets or advisory services to clients deriving the majority of their revenues from the extraction of coal.  By the end of 2024, [You] will also phase out [Your] remaining credit exposure to such clients."  Please explain how You decided to adopt these policies, including but not limited to identifying all Communications You had with any outside party, including but not limited to any Global Climate Initiative or member thereof, related to the formulation of these policies.

29.     According to Your October 8, 2021 "Environmental and Social Policy Framework," You "will not provide project financing or other forms of asset-specific financing where the proceeds will be used to develop a new coal-fired power plant or refinance an existing coal-fired power plant."  Please explain how You decided to adopt this policy, including but not limited to identifying all Communications You had with any outside party, including but not limited to any Global Climate Initiative or member thereof, related to the formulation of this policy.

30.     According to Your October 8, 2021 "Environmental and Social Policy Framework," You "will not provide project financing or other forms of asset-specific financing where the proceeds will be used for new upstream, midstream or downstream greenfield oil and gas development in the Arctic, including the Arctic National Wildlife Refuge."  Please explain how You decided to adopt this policy, including but not limited to identifying all Communications You had with any outside party, including but not limited to any Global Climate Initiative or member thereof, related to the formulation of this policy.

31.     In Your October 8, 2021 "Environmental and Social Policy Framework," You note that "businesses…must work together to facilitate the transition to a low-carbon economy."  Please explain what steps You have taken to work with other businesses in the financial services industry

RECEIVED
November 2, 2022
Office of the Attorney General

to facilitate a transition to a low-carbon economy, including but not limited to identifying any Communications You had with any Global Climate Initiative or member thereof.

32.     In Your October 8, 2021 "Environmental and Social Policy Framework," You note that "legal and regulatory obligations" "may constrain [Your] work against the ambitions of the NZBA." Please identify all legal and regulatory obligations that may limit Your ability to achieve the goals of the NZBA.

33.     Identify all members of the following teams or committees: (a) Commercial Banking "Green Economy" specialized industry team; (b) Operating Committee; (c) Corporate Responsibility Team; (d) Corporate Sustainability Team; (e) Operational Sustainability Team; (f) Climate Risk Team; (g) Global Environmental Team; and (h) Social Risk Management Team.

## DEMANDS FOR DOCUMENTS

1.     Produce all Documents and Communications related to Your decision to join each Global Climate Initiative of which You are a member, including but not limited to the Net-Zero Banking Alliance.

2.     Produce all Documents and Communications related to any Global Climate Initiative or any committee, board, group, or subgroup thereof.

3.     Produce all Documents and Communications between You and any member of the Net-Zero Banking Alliance Steering Group related to any aspect of the Net-Zero Banking Alliance.

4.     Produce all Documents and Communications between You and any signatory or member of a Global Climate Initiative related to any ESG factors involving any Covered Company.

5.     Produce all Documents and Communications related to interactions, engagements, or meetings between You and any Covered Company related to the Covered Company meeting any Environmental Goal(s).

6.     Produce all Documents and Communications between You and any other financial institution related to a Covered Company achieving any Environmental Goal.

7.     Produce all Documents and Communications between You and any Covered Company about how it may be difficult for that Covered Company to finance its activities without achieving specified Environmental Goals.

8.     Produce all Documents and Communications related to any changes made by Covered Companies in response to the Communications, interactions, engagements, or meetings with You regarding achievement of Environmental Goals.

RECEIVED
November 2, 2022
Office of the Attorney General

9.      Produce all Documents and Communications between You and any Covered Company related to ESG Factors or changes to the Covered Company's business practices in order to achieve Environmental Goals beyond what is required by applicable law, including but not limited to Documents sufficient to identify each such Covered Company.

10.     Produce all Documents and Communications related to any current, former, or prospective member or signatory of any Global Climate Initiative relating to any Covered Company.

11.     Produce all Documents and Communications related to any analysis You conducted on the economic impact of transitioning Covered Companies to net zero by 2050, regardless of whether the analysis is limited to You, any specific Covered Company, or the country or global economy in general.

12.     Produce all Documents and Communications related to Research regarding the financial impact that following Your preferred course of action on environmental issues would have on any Covered Company, including but not limited to Documents sufficient to show all assumptions made in determining that financial impact, including but not limited to presumed government actions.

13.     Produce all Documents and Communications related to any condition of Your continuing to provide banking services to a Covered Company in which You required that the Covered Company make certain pledges or commitments related to any ESG Factor or Environmental Goal beyond that which was already required by applicable law.

14.     Produce all Documents and Communications related to each instance in which You declined to do business or chose to stop doing business with an entity due either directly or indirectly to Environmental Goals, ESG Factors, ESG Integration Practices, or previous commitments made to a Global Climate Initiative.

15.     Regarding each Covered Company, produce all Documents and Communications related to Your commitment as part of the Net-Zero Banking Alliance to "transition all operational and attributable GHG emissions from [Your] lending and investment portfolios to align with pathways to net-zero by mid-century, or sooner, including CO2 emissions reaching net-zero at the latest by 2050."

16.     Regarding each Covered Company, produce all Documents and Communications related to Your commitment as part of the Net-Zero Banking Alliance to "facilitat[e] the necessary transition in the real economy through prioritizing client engagement, and offering products and services to support clients' transition."

17.     Regarding each Covered Company, produce all Documents and Communications related to Your commitment as part of the Net-Zero Banking Alliance to "engag[e] on corporate and industry (financial and real economy) action, as well as public policies, to help support a net-zero transition of economic sectors."

RECEIVED
November 2, 2022
Office of the Attorney General

18.     Produce all Documents and Communications related to Your models regarding ESG risks for Covered Companies, including but not limited to ESG risks related to the possibility of an international conflict or war, ESG risks related to energy security, and ESG risks related to an entity's relationship with authoritarian governments and potential sanctions resulting therefrom.

19.     Produce all Documents and Communications related to Your participation in the "Responsible Banking Academy" of the UNEP FI.

20.     Identify and produce all Documents and Communications related to any target-setting guidelines or "Guidelines for Climate Change Target Setting."

21.     Produce a copy of Your 2020 LTCMA paper "Weighing the investment implications of climate change," which is referenced in Your April 2021 paper "Achieving net zero: The path to a carbon-neutral world" and appears to no longer be available on Your website.

22.     Produce all Communications relating to establishing emissions or emissions intensity reductions targets between any of the following groups or committees and any Global Climate Initiate or member thereof: (a) Board of Directors Public Responsibility Committee; (b) Board of Directors Risk Committee; (c) Board of Directors Compensation & Management Development Committee; (d) Board of Directors Corporate Governance & Nominating Committee; (e) Board of Directors Audit Committee; (f) Commercial Banking "Green Economy" specialized industry team; (g) Operating Committee; (h) Corporate Responsibility Team; (i) Corporate Sustainability Team; (j) Operational Sustainability Team; (k) Climate Risk Team; (l) Global Environmental Team; and (m) Social Risk Management Team.

23.     Produce all Documents identified, referred to, or consulted in any way in preparing Your response to any Request in this civil investigative demand.

**There is a continuing obligation to disclose pursuant to this CID.**

RECEIVED
November 2, 2022
Office of the Attorney General

**VERIFICATION**

I, _____, am employed by JP Morgan Chase & Co. as

a _____, and I am authorized to give this Verification on its

behalf.  I execute this verification and state the following under penalty of perjury under the laws

of the Commonwealth of Kentucky.

I have read the JP Morgan's objections and responses to the Civil Investigative Demand

and Subpoena issued on _____, 2022, and state that the factual matters set forth in the

responses are true, correct, and complete to the best of my knowledge, information and belief.

Further, I certify that records and documents produced herein were made at or near the time

of the occurrence of the matters set forth by, or from information transmitted by, a person with

knowledge those matters, and were made and maintained as a regular practice in the course of the

regularly conducted business activities.

Signature:_____

STATE OF _____

COUNTY OF _____

Subscribed, sworn to and acknowledged before me by _____

(name), _____ (title), on behalf of _____ on

_____, _____.

My commission expires: _____

Signature: _____

Print Name: _____

Title: _____

RECEIVED
November 2, 2022
Office of the Attorney General

Filed          22-CI-00842          10/31/2022          Amy Feldman, Franklin Circuit Clerk

Filed          22-CI-00842      10/21/2022        Amy Feldman, Franklin Circuit Clerk



COMMONWEALTH OF KENTUCKY
## OFFICE OF THE ATTORNEY GENERAL

DANIEL CAMERON
ATTORNEY GENERAL

1024 CAPITAL CENTER DRIVE
SUITE 200
FRANKFORT, KY 40601

## SUBPOENA AND CIVIL INVESTIGATIVE DEMAND
## IN RE INVESTIGATION OF:

### Net-Zero Banking Alliance

TO:      **Morgan Stanley**
         **1585 Broadway**
         **New York, NY 10036**

SERVE:   **CT Corporation System**
         **306 W Main St**
         **Suite 512**
         **Frankfort, KY 40601**

Pursuant to the authority granted in KRS 367.240 and 367.250, the Attorney General of Kentucky, having reason to believe that a person has engaged in, is engaging in, or is about to engage in any act or practice declared to be unlawful by KRS 367.110 to 367.300; or having reason to believe it is in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in, is engaging in or is about to engage in, any act or practice declared to be unlawful by KRS 367.110 to 367.300; or both, hereby executes this Subpoena and Civil Investigative Demand, as follows:

_____ That Morgan Stanley furnish, under oath or affirmation, a report in writing setting forth the relevant facts and circumstances of which Morgan Stanley has knowledge.

_____ That Morgan Stanley personally appear and testify at the following location on the following date and time: _____

__X__ That, under oath or affirmation, Morgan Stanley answer the following requests and produce the following documents at the time and place above or, if blank, then by emailing them together with a completed sworn statement of authenticity and completeness of documents, by no later than twenty-one (21) days following service of this Subpoena and Civil Investigative Demand to: zach.richards@ky.gov and donald.haas@ky.gov or

**Office of the Attorney General of Kentucky**
**ATTN: Zachary Richards & Donald Haas**
**1024 Capital Center Drive**
**Suite 200**

EXHIBIT 5

RECEIVED
November 2, 2022
Office of the Attorney General

**Frankfort, KY 40601**

**Failure to comply with this Subpoena and Civil Investigative Demand may result in legal action pursuant to KRS 367.290. Intentional concealment, falsification or destruction of documents may be punishable as a class A misdemeanor under KRS 367.990(3). It is a class D felony to intentionally destroy, mutilate, conceal, remove, alter, or fabricate physical evidence believing that an official proceeding may be pending or instituted, pursuant to KRS 524.100.**

Date Issued: October 19, 2022

DANIEL CAMERON
ATTORNEY GENERAL

By: */s/ Zachary J Richards*
    Zachary J Richards
    Kentucky Office of the Attorney General
    1024 Capital Center Drive
    Frankfort, KY 40601
    502-696-5519
    Email: zach.richards@ky.gov

    */s/ Donald Haas*
    Donald Haas
    Kentucky Office of the Attorney General
    1024 Capital Office of the Attorney General
    1024 Capital Center Drive
    Frankfort, KY 40601
    502-696-5612
    Email: donald.haas@ky.gov

RECEIVED
November 2, 2022
Office of the Attorney General

**PROOF OF SERVICE OF SUBPOENA AND CIVIL INVESTIGATIVE DEMAND**
**(to be completed by server)**

Served via:    ___x___       1. Certified mail, return receipt requested.

               _____       2. Personal delivery

               _____       3. Fax

Date of service:    _____


## PERSON SERVED (for personal delivery)


Name:    _____

Title:   _____

Description:    _____

_____

_____

_____

_____

_____


## SERVED BY:

Name:    _____

Title:   _____

Signature:    _____

RECEIVED
November 2, 2022
Office of the Attorney General

## DEFINITIONS AND INSTRUCTIONS

### DEFINITIONS

As used herein:

As used in this Demand, the following terms shall have the meanings set forth herein:

"You" and "Your" means Morgan Stanley and all agents, representatives, employees, independent contractors, attorneys, and other persons acting or purporting to act on its behalf, all subsidiary companies and affiliated companies, board of directors and advisory boards, and all joint projects, teams, or endeavors with any third party.

"All" and "any" shall each be construed to encompass the meanings of the words "all" and "any."

"And" and "or" shall be construed broadly to include both the disjunctive and the conjunctive, to be equivalent to "and/or," in order to render these Requests as broad as possible.

"Communication" means any expression, statement, conveyance, or dissemination of any words, thoughts, statements, ideas, or information, regardless of form, format, or kind. "Communication" includes but is not limited to oral or written communications of any kind, such as telephone conversations, discussions, meetings, notes, memoranda, letters, agreements, emails or other electronic communications, text messages, facsimiles, and other forms of written or oral exchange that are recorded in any way, including video recordings, audio recordings, written notes, or otherwise. Any Communication that also falls within the definition of "Document" shall constitute both a Document and a Communication for purposes of this civil investigative demand.

"Covered Company" means any entity to which You provide banking services of any kind that may be implicated by any commitment You made or intend to make to any Global Climate Initiative.

"Document" includes every "writing," "recording," and "photograph" as Federal Rule of Evidence 1001 defines those terms, as well as any "duplicate" of any writing, recording, or photograph. "Document" includes but is not limited to electronic documents, files, databases, and records, including but not limited to emails, voicemails, text messages, calendar appointments, instant messages, MMS messages, SMS messages, iMessages, computer files, spreadsheets, memoranda, books of accounts, ledgers, invoices, financial statements, purchase orders, receipts, canceled checks, charts, graphs, bills, facsimiles, and metadata. The term Document includes every draft of any other material that falls within the definition of Document.

"Environmental Goals" means achieving an outcome or changing behavior, including but not limited to changing information disclosure practices, related to any aspect of the environment or environmental policy. This definition includes but is not limited to goals that seek net zero greenhouse gas emissions standards or disclosures, compliance with the Paris Agreement (a.k.a. Paris Climate Agreement or Paris Climate Accords) or any agreement made at COP 26, the

RECEIVED
November 2, 2022
Office of the Attorney General

imposition of a carbon tax, and/or adoption of electric vehicles, or renewable energy, including wind and solar power.

"ESG Factors" means factors relating to an entity's environmental, ecological, climatological, social, and/or governance attributes, risks, opportunities, impacts, or effects, whether present or future, actual or perceived, and whether or not priced into the entity's securities. This definition includes but is not limited to factors relating to an entity's environmental, ecological, climatological, or social impacts. This definition includes but is not limited to disclosable factors under SASB and/or TCFD guidelines.

"ESG Integration Practices" means the practice of incorporating ESG factors into Your decisions related to provision of banking services and/or engaging with Covered Companies on issues relating to ESG Factors. This definition includes but is not limited to the practice of leveraging Your position as a provider of banking services to an entity or entities to take actions advancing environmental, ecological, climatological, social, or corporate governance-related goals. This definition further includes, but is not limited to, the use of screens or filters based on environmental, ecological, climatological, social, or corporate governance criteria in determining whether to enter into a banking relationship with an entity or entities. "ESG Integration Practices" shall be construed to include all similar activities, including activities described as "responsible banking" and/or "sustainable banking."

"Global Climate Initiative" means any group, organization, or affiliation of private and/or public entities for the purpose of utilizing the financial system to reduce or eliminate greenhouse gas emissions or otherwise pursue environmental goals. Global Climate Initiatives include but are not limited to the Glasgow Financial Alliance for Net Zero and Net-Zero Banking Alliance.

"Identify", when used with respect to a Person or entity, means information sufficient to allow employees of the Attorney General to ascertain the current contact information (name, home or business address, telephone number, email), and if not a natural person, the current contact information for Your point of contact with the entity or facility to be identified, as well as the relationship of that Person or entity to You.

"Identify", when used with respect to a fact or event, means information sufficient to allow employees of the Attorney General to ascertain the fact or event with reasonable particularity, and to identify each Person believed to have knowledge with respect to the fact or event and each Document that refers or relates to the fact or event.

"Identify", when used with respect to a transaction, means to provide information sufficient to allow ascertainment of the banking and financial information of the sending and receiving parties, the method of payment or funds transfer, and the natural persons involved with the transfer or payment.

"Identify", with regard to a Communication, means to state with specificity the date of the Communication; the medium of communication; the location of the Communication; the name(s) and alias(es) of the Person(s) who made the Communication; and the name(s) and alias(es) of all Persons who were present when the statement was made, who received the Communication, who

RECEIVED
November 2, 2022
Office of the Attorney General

heard the Communication, or who came to know of the content of the Communication at a later time.

"Person" means any natural person, corporation, proprietorship, partnership, association, firm, or entity of any kind.

"Relating to", "related to", and "relate to" mean to be relevant in any way to the subject matter in question, including without limitation all information that directly or indirectly contains, records, reflects, summarizes, evaluates, refers to, is pertinent to, indicates, comments upon, or discusses the subject matter; or that states the background of, or was the basis for, or that records, evaluates, comments, was referred to, relied upon, utilized, generated, transmitted, or received in arriving at any conclusion, opinion, estimate, position, decision, belief, policy, practice, course of business, course of conduct, procedure, or assertion concerning the subject matter.

"Research" means any and all research, analysis, assessment, study, report, audit, memorandum, or other investigation You conducted, drafted, created, commissioned, reviewed, received, or used.

## INSTRUCTIONS

1. Unless specifically stated otherwise, please restrict your search for all information and documents requested below to the period from January 1, 2015, to the present.

2. For each Demand for Information and Documents, you shall type the Demand and type Your corresponding response. You should identify—by Bates range, or by file names and locations—which Documents are responsive to each Demand. If You do not know the answer to a Demand, You shall identify in Your response the individual or business entity that has the answer to the Demand for Information. The document on which You type each Demand and Your corresponding response shall be executed by You before a Notary Public.

3. No demand seeks privileged information. If You believe that You have responsive materials that are privileged, please produce a privilege log that identifies each Document or Communication, the basis for withholding the Document, the reason withheld, and sufficient information to permit the Attorney General's Office to assess the applicability of the privilege and/or the work-product doctrine.

4. You are required to produce the following requested Documents and information, to the extent that they are within your possession, custody, and/or control.

RECEIVED
November 2, 2022
Office of the Attorney General

## DEMAND FOR INFORMATION AND DOCUMENTS

### DEMANDS FOR INFORMATION

1.      Identify all of Your divisions, groups, offices, or business segments whose responsibilities relate or used to relate to Your membership in the Net-Zero Banking Alliance or to Your ESG Integration Practices, and identify all executives, directors, officers, managers, supervisors, or other leaders of each division, group, office, or business segment.

2.      Identify each Global Climate Initiative with which You are affiliated and explain the reasons You chose to join such Global Climate Initiatives.

3.      For each Global Climate Initiative with which you are affiliated, identify who made the decision to join the Initiative, including any involvement or input from Your Board of Directors, investors, or Covered Companies in Your reasoning or decision.

4.      Describe Your involvement in each Global Climate Initiative in which You participate, including the date You first began participating, any promises, pledges, or other commitments You made to the Global Climate Initiative, or any actions You made or took pursuant to, or consistent with, such commitments, or Your initial or on-going participation, and the employee(s) responsible for managing Your relationship with each Global Climate Initiative.

5.      Describe Your involvement with the Steering Group of the Net-Zero Banking Alliance, including but not limited to identifying the "C-suite delegate" who represents You on the Steering Group at the "Principal level," the identities of other "C-suite delegates" from other members of the Steering Group, the identities of any other individuals who represented You to the Steering Group, and the dates, times, and locations of all Steering Group meetings.

6.      Identify the objectives and mission of the Net-Zero Banking Alliance and describe how You incorporated these objectives into Your operations.

7.      Describe the extent to which You have incorporated the Principles for Responsible Banking into Your operations, including but not limited to the extent to which You consulted with other Net-Zero Banking Alliance signatories as part of the incorporation process.

8.      Describe Your CEO's involvement as a member of the Glasgow Financial Alliance for Net Zero Principals Group, including but not limited to the dates, times, and locations of all Principals Group meetings, and any commitments, pledges, or other promises made by Your CEO, either for himself or on Your behalf, as part of his membership in the Principals Group.

9.      Describe the extent to which You, as a signatory to the Net-Zero Banking Alliance, have acted consistent with Your commitment to "facilitat[e] the necessary transition in the real economy through prioritizing client engagement and offering products and services to support clients' transition."

RECEIVED
November 2, 2022
Office of the Attorney General

10. Describe the extent to which You, as a signatory to the Net-Zero Banking Alliance, have acted consistent with Your commitment to "engag[e] on corporate and industry (financial and real economy) action, as well as public policies, to help support a net-zero transition of economic sectors in line with science and giving consideration to associated social impacts."

11. Describe the extent to which You, as a signatory to the Net-Zero Banking Alliance, have acted consistent with Your commitment to "support[] innovation, the near-term deployment of existing viable technologies, and scal[e] up the financing of credible, safe, and high-quality climate solutions that are compatible with other Sustainable Development Goals."

12. In responding to Requests 8-11, please include any Communications with, or other actions taken by You, to engage with any nationally recognized statistical rating organization.

13. Identify any target-setting guidelines and related "targets," including but not limited to any "2024 targets," "2030 targets," "2050 targets," or other "milestone targets," for Your operations, and identify how You set those targets, the sectors involved in those targets, and how Your targets are or will be aligned with Net-Zero Banking Alliance guidelines.

14. Identify all entities to which You provide banking services that are part of the auto manufacturing industry, energy industry, or power generation industry.

15. Identify any agreements You have reached with any other financial institution to coordinate action to achieve net-zero emissions targets, including but not limited to any commitments You have made as part of Your membership in any Global Climate Initiative of which other financial institutions are also members.

16. Explain the basis of Your expectation, as a signatory to the Net-Zero Banking Alliance, that "governments will follow through on their own commitments to ensure that the objectives of the Paris Agreement are met," including but not limited to whether You believe the United States government will meet its commitments under the Paris Agreement, the legal mechanism by which it will meet these commitments, and any assumptions related to the structure and function of the government that underlie Your belief.

17. Describe Your political projections underlying Your predictions regarding any mandates, or subsidies in the United States related to achieving environmental goals, including but not limited to the political composition of Congress and the executive branch, adopted legislation and administrative rules, the impact of any mandates or subsidies on energy prices and the impact of increasing energy prices on an incumbent party's control of Congress or the executive branch.

18. Explain the manner in which You incorporated Your assumptions about energy transition and government mandates into Your general macroeconomic forecasts, and forecasts for Covered Companies. For example, to the extent Your analyses of credit risk for a Covered Company presumed that the United States would limit or prohibit fossil fuel-based energy production by a certain date, please explain how You incorporated that assumption into Your analyses of the costs of energy, the impact of those costs on economic growth in general and the

8354BA41-16C9-42D7-8129-5050CFBB8B86 : 000076 of 000103

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

COM : 000076 of 000101

RECEIVED
November 2, 2022
Office of the Attorney General

Filed          22-CI-00842       10/31/2022    Amy Feldman, Franklin Circuit Clerk

credit risk of other Covered Companies, and the financial performance of other U.S. companies affected by those changes.

19.    Identify the methodology and results of any analysis You conducted relating to the economic impact of transitioning all Covered Companies to net zero by 2050, including but not limited to the costs associated with the transition and any assumptions You made relating to any government action that might be taken to facilitate the transition such as new laws, regulations, mandates, or subsidies.

20.    Identify all entities with which You declined to do business or chose to stop doing business due either directly or indirectly to Environmental Goals, ESG Factors, or ESG Integration Practices and explain how the Environmental Goal, ESG Factor, or ESG Integration Practice informed Your decision.

21.    Identify any interactions or engagements You have had with a Covered Company related to the Covered Company's political, lobbying, or trade association activities, including any such activities related to environmental issues, reduction of greenhouse gas emissions, restrictions on fossil fuel use, or compliance with the Paris Agreement, and explain how any resulting change in a Covered Company's operations aligned with the economic interests of the Covered Company.

22.    In Your November 2021 "Methodology for Morgan Stanley's 2030 Interim Financed Emissions Targets on the Path to Net-Zero" (the "Net-Zero Methodology"), You assert that "[a]ddressing [climate change] effectively will require close collaboration by business, government, and civil society."  Please describe what steps You have taken to bring about "close collaboration" in the financial and/or banking industries to achieve this goal, including but not limited to: (a) Any agreements You have reached with any other financial institution to coordinate action to reduce emissions, including but not limited to any commitments You have made as part of Your membership in any Global Climate Initiative of which other financial institutions are also members; (b) Any Communications You have had with any other financial institution relating to a Covered Company achieving any Environmental Goal; and (c) Any Communications You have had with any Covered Company about how it will be difficult for that Covered Company to finance its activities without achieving specified Environmental Goal(s).

23.    In Your Net-Zero Methodology, You identified "sector-specific interim emissions reduction targets for 2030 in the auto manufacturing, energy, and power sectors."  You also promise "[f]urther sector targets to follow," and that You "will seek to set targets for additional sectors that align with [Your] NZBA-aligned objectives to cover a significant majority" of Your "financed emissions."  Please explain: (a) How You chose those industries/sectors and set those numerical targets, including specifically identifying all Communications You had with any outside party, including but not limited to contractors or consultants, relating to the setting of those targets; (b) What other sectors You plan to expand Your Net-Zero Methodology to cover; and (c) How that expansion will align with NZBA guidelines.

24.    Identify all entities to which You provide banking services that are part of the auto manufacturing sector, as You used that term in Your Net-Zero Methodology.

RECEIVED
November 2, 2022
Office of the Attorney General

25.     Identify all entities to which You provide banking services that are part of the energy sector, as You used that term in Your Net-Zero Methodology.

26.     Identify all entities to which You provide banking services that are part of the power sector, as You used that term in Your Net-Zero Methodology.

27.     In Your Net-Zero Methodology, You state that "[t]he Net-Zero Banking Alliance (NZBA), where [You] are a founding member, informs how [You] set and manage greenhouse gas emissions targets related to [Your] business activities." Please explain exactly how NZBA informs Your conduct, including but not limited to any commitments, pledges, or agreements You made to comply with NZBA guidance, and any areas where You expressly rejected any NZBA guidance or recommendation.

28.     In Your Net-Zero Methodology, You discuss Your membership in the Net-Zero Banking Alliance (NZBA), and note that "NZBA combines near-term action with accountability, providing an internationally coherent framework and guidelines in which to operate." Please explain: (a) By what mechanisms You are accountable to NZBA; (b) What other financial institutions You believe are accountable to NZBA; and (c) What steps You intend to take to ensure that other financial institutions are accountable to NZBA.

29.     Identify all members of Your Global Sustainable Finance Group and Your Environmental and Social Risk Management Group who had or have any involvement with drafting or implementing any aspect of Your Net-Zero Methodology.

30.     According to Your March 2022 "Environmental and Social Policy Statement," You "will not finance transactions globally that directly support the development of new or physical expansions of coal-fired power generation or provide financing for a stand-alone coal-fired power plant, unless there is carbon capture and storage or equivalent carbon emissions reduction technology." Please explain how You decided to adopt this policy, including but not limited to identifying all Communications You had with any outside party, including but not limited to any Global Climate Initiative or member thereof, related to the formulation of this policy.

31.     According to Your March 2022 "Environmental and Social Policy Statement," You "will not provide financing where the specified use of proceeds would be directed toward new thermal coal mine development or expansion of existing mines," and that "[b]y 2025, [You] will not provide lending, capital markets or advisory services to any company with greater than 20% of revenue from thermal coal mining, unless such company has a public diversification strategy or the transaction being provided by [Your] lending, capital markets or advisory services facilitates diversification," and will have no exposure to thermal coal companies after 2030. Please explain how You decided to adopt this policy, including but not limited to identifying all Communications You had with any outside party, including but not limited to any Global Climate Initiative or member thereof, related to the formulation of this policy.

32.     According to Your March 2022 "Environmental and Social Policy Statement," You "will not directly finance new oil and gas exploration and development in the Arctic, including the

RECEIVED
November 2, 2022
Office of the Attorney General

8354BA41-16C9-42D7-8129-5050CFBB8B86 : 000078 of 000103

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

COM : 000078 of 000101

Arctic National Wildlife Refuge (ANWR)." Please explain how You decided to adopt this policy, including but not limited to identifying all Communications You had with any outside party, including but not limited to any Global Climate Initiative or member thereof, related to the formulation of this policy.

33.    In Your March 2022 "Environmental and Social Policy Statement," You note that "a transition to a low-carbon economy necessitates joint efforts by governments, businesses and individuals." Please explain what "joint efforts" You have taken with others in the financial services industry to facilitate a transition to a low-carbon economy, including but not limited to identifying any Communications You have had with any Global Climate Initiative or member thereof.

34.    Identify all members of Your: (a) Executive Climate Change Risk Steering Committee; (b) Executive Climate Change Risk Working Group; (c) Climate Risk Committee; (d) Financed Emissions Oversight Committee; (e) Environmental and Social Risk Management Group; (f) Firm Risk Committee; (g) Global Sustainable Finance Group.

## DEMANDS FOR DOCUMENTS

1.    Produce all Documents and Communications related to Your decision to join each Global Climate Initiative of which You are a member, including but not limited to the Net-Zero Banking Alliance.

2.    Produce all Documents and Communications related to any Global Climate Initiative or any committee, board, group, or subgroup thereof.

3.    Produce all Documents and Communications between You and any other member of the Net-Zero Banking Alliance Steering Group related to any aspect of the Net-Zero Banking Alliance.

4.    Produce all Documents and Communications between You and any signatory or member of a Global Climate Initiative related to any ESG factors involving any Covered Company.

5.    Produce all Documents and Communications related to interactions, engagements, or meetings between You and any Covered Company related to the Covered Company meeting any Environmental Goal(s).

6.    Produce all Documents and Communications between You and any other financial institution related to a Covered Company achieving any Environmental Goal.

7.    Produce all Documents and Communications between You and any Covered Company about how it may be difficult for that Covered Company to finance its activities without achieving specified Environmental Goals.

RECEIVED
November 2, 2022
Office of the Attorney General

8.      Produce all Documents and Communications related to any changes made by Covered Companies in response to the Communications, interactions, engagements, or meetings with You regarding achievement of Environmental Goals.

9.      Produce all Documents and Communications between You and any Covered Company related to ESG Factors or changes to the Covered Company's business practices in order to achieve Environmental Goals beyond what is required by applicable law, including but not limited to Documents sufficient to identify each such Covered Company.

10.     Produce all Documents and Communications related to any current, former, or prospective member or signatory of any Global Climate Initiative relating to any Covered Company.

11.     Produce all Documents and Communications related to any analysis You conducted on the economic impact of transitioning Covered Companies to net zero by 2050, regardless of whether the analysis is limited to You, any specific Covered Company, or the country or global economy in general.

12.     Produce all Documents and Communications related to Research regarding the financial impact that following Your preferred course of action on environmental issues would have on any Covered Company, including but not limited to Documents sufficient to show all assumptions made in determining that financial impact, including but not limited to presumed government actions.

13.     Produce all Documents and Communications related to any condition of Your continuing to provide banking services to a Covered Company in which You required that the Covered Company make certain pledges or commitments related to any ESG Factor or Environmental Goal beyond that which was already required by applicable law.

14.     Produce all Documents and Communications related to each instance in which You declined to do business or chose to stop doing business with an entity due either directly or indirectly to Environmental Goals, ESG Factors, ESG Integration Practices, or previous commitments made to a Global Climate Initiative.

15.     Regarding each Covered Company, produce all Documents and Communications related to Your commitment as part of the Net-Zero Banking Alliance to "transition all operational and attributable GHG emissions from [Your] lending and investment portfolios to align with pathways to net-zero by mid-century, or sooner, including CO2 emissions reaching net-zero at the latest by 2050."

16.     Regarding each Covered Company, produce all Documents and Communications related to Your commitment as part of the Net-Zero Banking Alliance to "facilitat[e] the necessary transition in the real economy through prioritizing client engagement, and offering products and services to support clients' transition."

RECEIVED
November 2, 2022
Office of the Attorney General

17.     Regarding each Covered Company, produce all Documents and Communications related to Your commitment as part of the Net-Zero Banking Alliance to "engag[e] on corporate and industry (financial and real economy) action, as well as public policies, to help support a net-zero transition of economic sectors."

18.     Produce all Documents and Communications related to Your models regarding ESG risks for Covered Companies, including but not limited to ESG risks related to the possibility of an international conflict or war, ESG risks related to energy security, and ESG risks related to an entity's relationship with authoritarian governments and potential sanctions resulting therefrom.

19.     Produce all Documents and Communications related to Your participation in the "Responsible Banking Academy" of the UNEP FI.

20.     Identify and produce all Documents and Communications related to any target-setting guidelines or "Guidelines for Climate Change Target Setting."

21.     Produce all Communications relating to establishing emissions or emissions intensity reductions targets between any of the following groups or committees and any Global Climate Initiative or member thereof: (a) Board of Directors Risk Committee; (b) Nominating and Governance Committee; (c) Executive Climate Change Risk Steering Committee; (d) Executive Climate Change Risk Working Group; (e) Climate Risk Committee; (f) Financed Emissions Oversight Committee; (g) Environmental and Social Risk Management Group; (h) Firm Risk Committee; and (i) Global Sustainable Finance Group.

22.     Produce all Documents identified, referred to, or consulted in any way in preparing Your response to any Request in this civil investigative demand.

**There is a continuing obligation to disclose pursuant to this CID.**

RECEIVED
November 2, 2022
Office of the Attorney General

**VERIFICATION**

I, _____, am employed by JP Morgan Chase & Co. as

a _____, and I am authorized to give this Verification on its

behalf. I execute this verification and state the following under penalty of perjury under the laws

of the Commonwealth of Kentucky.

I have read the JP Morgan's objections and responses to the Civil Investigative Demand

and Subpoena issued on _____, 2022, and state that the factual matters set forth in the

responses are true, correct, and complete to the best of my knowledge, information and belief.

Further, I certify that records and documents produced herein were made at or near the time

of the occurrence of the matters set forth by, or from information transmitted by, a person with

knowledge those matters, and were made and maintained as a regular practice in the course of the

regularly conducted business activities.

Signature:_____

STATE OF _____

COUNTY OF _____

Subscribed, sworn to and acknowledged before me by _____

(name), _____ (title), on behalf of _____ on

_____, _____.

My commission expires: _____

Signature: _____

Print Name: _____

Title: _____

RECEIVED
November 2, 2022
Office of the Attorney General

Filed 22-CI-00842 10/31/2022 Amy Feldman, Franklin Circuit Clerk



8354BA41-16C9-42D7-8129-5050CFBB8B86 : 000083 of 000103

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

COM : 000083 of 000101

COMMONWEALTH OF KENTUCKY
## OFFICE OF THE ATTORNEY GENERAL

DANIEL CAMERON
ATTORNEY GENERAL

1024 CAPITAL CENTER DRIVE
SUITE 200
FRANKFORT, KY 40601

## SUBPOENA AND CIVIL INVESTIGATIVE DEMAND
## IN RE INVESTIGATION OF:

**Net-Zero Banking Alliance**

TO:        **Wells Fargo & Company**
           **420 Montgomery Street**
           **San Francisco, CA 94104**


SERVE:     **Corporation Service Company**
           **421 West Main Street**
           **Frankfort, KY 40601**

Pursuant to the authority granted in KRS 367.240 and 367.250, the Attorney General of Kentucky, having reason to believe that a person has engaged in, is engaging in, or is about to engage in any act or practice declared to be unlawful by KRS 367.110 to 367.300; or having reason to believe it is in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in, is engaging in or is about to engage in, any act or practice declared to be unlawful by KRS 367.110 to 367.300; or both, hereby executes this Subpoena and Civil Investigative Demand, as follows:

_____ That Wells Fargo & Company furnish, under oath or affirmation, a report in writing setting forth the relevant facts and circumstances of which Wells Fargo & Company has knowledge.

_____ That Wells Fargo & Company personally appear and testify at the following location on the following date and time: _____

__X__ That, under oath or affirmation, Wells Fargo and Company answer the following requests and produce the following documents at the time and place above or, if blank, then by emailing them together with a completed sworn statement of authenticity and completeness of documents, by no later than twenty-one (21) days following service of this Subpoena and Civil Investigative Demand to: zach.richards@ky.gov and donald.haas@ky.gov or

**Office of the Attorney General of Kentucky**
**ATTN: Zachary Richards & Donald Haas**
**1024 Capital Center Drive**
**Suite 200**
**Frankfort, KY 40601**

RECEIVED
November 2, 2022
Office of the Attorney General

EXHIBIT 6

Filed 22-CI-00842 10/31/2022 Amy Feldman, Franklin Circuit Clerk
An Equal Opportunity Employer M/F/D

**Failure to comply with this Subpoena and Civil Investigative Demand may result in legal action pursuant to KRS 367.290. Intentional concealment, falsification or destruction of documents may be punishable as a class A misdemeanor under KRS 367.990(3). It is a class D felony to intentionally destroy, mutilate, conceal, remove, alter, or fabricate physical evidence believing that an official proceeding may be pending or instituted, pursuant to KRS 524.100.**

Date Issued: October 19, 2022

DANIEL CAMERON
ATTORNEY GENERAL

By: */s/ Zachary J Richards*
  Zachary J Richards
  Kentucky Office of the Attorney General
  1024 Capital Center Drive
  Frankfort, KY 40601
  502-696-5519
  Email: zach.richards@ky.gov

  */s/ Donald Haas*
  Donald Haas
  Kentucky Office of the Attorney General
  1024 Capital Office of the Attorney General
  1024 Capital Center Drive
  Frankfort, KY 40601
  502-696-5612
  Email: donald.haas@ky.gov

RECEIVED
November 2, 2022
Office of the Attorney General

**PROOF OF SERVICE OF SUBPOENA AND CIVIL INVESTIGATIVE DEMAND**
**(to be completed by server)**

Served via:          x          1. Certified mail, return receipt requested.

_____          2. Personal delivery

_____          3. Fax

Date of service:          _____

**PERSON SERVED (for personal delivery)**

Name:          _____

Title:          _____

Description:          _____

_____

_____

_____

_____

_____

**SERVED BY:**

Name:          _____

Title:          _____

Signature:          _____

RECEIVED
November 2, 2022
Office of the Attorney General

## DEFINITIONS AND INSTRUCTIONS

### DEFINITIONS

As used herein:

As used in this Demand, the following terms shall have the meanings set forth herein:

"You" and "Your" means Wells Fargo & Company and all agents, representatives, employees, independent contractors, attorneys, and other persons acting or purporting to act on its behalf, all subsidiary companies and affiliated companies, board of directors and advisory boards, and all joint projects, teams, or endeavors with any third party.

"All" and "any" shall each be construed to encompass the meanings of the words "all" and "any."

"And" and "or" shall be construed broadly to include both the disjunctive and the conjunctive, to be equivalent to "and/or," in order to render these Requests as broad as possible.

"Communication" means any expression, statement, conveyance, or dissemination of any words, thoughts, statements, ideas, or information, regardless of form, format, or kind. "Communication" includes but is not limited to oral or written communications of any kind, such as telephone conversations, discussions, meetings, notes, memoranda, letters, agreements, emails or other electronic communications, text messages, facsimiles, and other forms of written or oral exchange that are recorded in any way, including video recordings, audio recordings, written notes, or otherwise. Any Communication that also falls within the definition of "Document" shall constitute both a Document and a Communication for purposes of this civil investigative demand.

"Covered Company" means any entity to which You provide banking services of any kind that may be implicated by any commitment You made or intend to make to any Global Climate Initiative.

"Document" includes every "writing," "recording," and "photograph" as Federal Rule of Evidence 1001 defines those terms, as well as any "duplicate" of any writing, recording, or photograph. "Document" includes but is not limited to electronic documents, files, databases, and records, including but not limited to emails, voicemails, text messages, calendar appointments, instant messages, MMS messages, SMS messages, iMessages, computer files, spreadsheets, memoranda, books of accounts, ledgers, invoices, financial statements, purchase orders, receipts, canceled checks, charts, graphs, bills, facsimiles, and metadata. The term Document includes every draft of any other material that falls within the definition of Document.

"Environmental Goals" means achieving an outcome or changing behavior, including but not limited to changing information disclosure practices, related to any aspect of the environment or environmental policy. This definition includes but is not limited to goals that seek net zero greenhouse gas emissions standards or disclosures, compliance with the Paris Agreement (a.k.a. Paris Climate Agreement or Paris Climate Accords) or any agreement made at COP 26, the

RECEIVED
November 2, 2022
Office of the Attorney General

imposition of a carbon tax, and/or adoption of electric vehicles, or renewable energy, including wind and solar power.

"ESG Factors" means factors relating to an entity's environmental, ecological, climatological, social, and/or governance attributes, risks, opportunities, impacts, or effects, whether present or future, actual or perceived, and whether or not priced into the entity's securities. This definition includes but is not limited to factors relating to an entity's environmental, ecological, climatological, or social impacts. This definition includes but is not limited to disclosable factors under SASB and/or TCFD guidelines.

"ESG Integration Practices" means the practice of incorporating ESG factors into Your decisions related to provision of banking services and/or engaging with Covered Companies on issues relating to ESG Factors. This definition includes but is not limited to the practice of leveraging Your position as a provider of banking services to an entity or entities to take actions advancing environmental, ecological, climatological, social, or corporate governance-related goals. This definition further includes, but is not limited to, the use of screens or filters based on environmental, ecological, climatological, social, or corporate governance criteria in determining whether to enter into a banking relationship with an entity or entities. "ESG Integration Practices" shall be construed to include all similar activities, including activities described as "responsible banking" and/or "sustainable banking."

"Global Climate Initiative" means any group, organization, or affiliation of private and/or public entities for the purpose of utilizing the financial system to reduce or eliminate greenhouse gas emissions or otherwise pursue environmental goals. Global Climate Initiatives include but are not limited to the Glasgow Financial Alliance for Net Zero and Net-Zero Banking Alliance.

"Identify", when used with respect to a Person or entity, means information sufficient to allow employees of the Attorney General to ascertain the current contact information (name, home or business address, telephone number, email), and if not a natural person, the current contact information for Your point of contact with the entity or facility to be identified, as well as the relationship of that Person or entity to You.

"Identify", when used with respect to a fact or event, means information sufficient to allow employees of the Attorney General to ascertain the fact or event with reasonable particularity, and to identify each Person believed to have knowledge with respect to the fact or event and each Document that refers or relates to the fact or event.

"Identify", when used with respect to a transaction, means to provide information sufficient to allow ascertainment of the banking and financial information of the sending and receiving parties, the method of payment or funds transfer, and the natural persons involved with the transfer or payment.

"Identify", with regard to a Communication, means to state with specificity the date of the Communication; the medium of communication; the location of the Communication; the name(s) and alias(es) of the Person(s) who made the Communication; and the name(s) and alias(es) of all Persons who were present when the statement was made, who received the Communication, who

RECEIVED
November 2, 2022
Office of the Attorney General

heard the Communication, or who came to know of the content of the Communication at a later time.

"Person" means any natural person, corporation, proprietorship, partnership, association, firm, or entity of any kind.

"Relating to", "related to", and "relate to" mean to be relevant in any way to the subject matter in question, including without limitation all information that directly or indirectly contains, records, reflects, summarizes, evaluates, refers to, is pertinent to, indicates, comments upon, or discusses the subject matter; or that states the background of, or was the basis for, or that records, evaluates, comments, was referred to, relied upon, utilized, generated, transmitted, or received in arriving at any conclusion, opinion, estimate, position, decision, belief, policy, practice, course of business, course of conduct, procedure, or assertion concerning the subject matter.

"Research" means any and all research, analysis, assessment, study, report, audit, memorandum, or other investigation You conducted, drafted, created, commissioned, reviewed, received, or used.

## INSTRUCTIONS

1. Unless specifically stated otherwise, please restrict your search for all information and documents requested below to the period from January 1, 2015, to the present.

2. For each Demand for Information and Documents, you shall type the Demand and type Your corresponding response.  You should identify—by Bates range, or by file names and locations—which Documents are responsive to each Demand.  If You do not know the answer to a Demand, You shall identify in Your response the individual or business entity that has the answer to the Demand for Information. The document on which You type each Demand and Your corresponding response shall be executed by You before a Notary Public.

3. No demand seeks privileged information.  If You believe that You have responsive materials that are privileged, please produce a privilege log that identifies each Document or Communication, the basis for withholding the Document, the reason withheld, and sufficient information to permit the Attorney General's Office to assess the applicability of the privilege and/or the work-product doctrine.

4. You are required to produce the following requested Documents and information, to the extent that they are within your possession, custody, and/or control.

RECEIVED
November 2, 2022
Office of the Attorney General

## DEMAND FOR INFORMATION AND DOCUMENTS

### DEMANDS FOR INFORMATION

1.      Identify all of Your divisions, groups, offices, or business segments whose responsibilities relate or used to relate to Your membership in the Net-Zero Banking Alliance or to Your ESG Integration Practices, and identify all executives, directors, officers, managers, supervisors, or other leaders of each division, group, office, or business segment.

2.      Identify each Global Climate Initiative with which You are affiliated and explain the reasons You chose to join such Global Climate Initiatives.

3.      For each Global Climate Initiative with which you are affiliated, identify who made the decision to join the Initiative, including any involvement or input from Your Board of Directors, investors, or Covered Companies in Your reasoning or decision.

4.      Describe Your involvement in each Global Climate Initiative in which You participate, including the date You first began participating, any promises, pledges, or other commitments You made to the Global Climate Initiative, or any actions You made or took pursuant to, or consistent with, such commitments, or Your initial or on-going participation, and the employee(s) responsible for managing Your relationship with each Global Climate Initiative.

5.      Identify the objectives and mission of the Net-Zero Banking Alliance and describe how You incorporated these objectives into Your operations.

6.      Describe the extent to which You have incorporated the Principles for Responsible Banking into Your operations, including but not limited to the extent to which You consulted with other Net-Zero Banking Alliance signatories as part of the incorporation process.

7.      Describe Your CEO's involvement as a member of the Glasgow Financial Alliance for Net Zero Principals Group, including but not limited to the dates, times, and locations of all Principals Group meetings, and any commitments, pledges, or other promises made by Your CEO, either for himself or on Your behalf, as part of his membership in the Principals Group.

8.      Describe the extent to which You, as a signatory to the Net-Zero Banking Alliance, have acted consistent with Your commitment to "facilitat[e] the necessary transition in the real economy through prioritizing client engagement and offering products and services to support clients' transition."

9.      Describe the extent to which You, as a signatory to the Net-Zero Banking Alliance, have acted consistent with Your commitment to "engag[e] on corporate and industry (financial and real economy) action, as well as public policies, to help support a net-zero transition of economic sectors in line with science and giving consideration to associated social impacts."

RECEIVED
November 2, 2022
Office of the Attorney General

10.     Describe the extent to which You, as a signatory to the Net-Zero Banking Alliance, have acted consistent with Your commitment to "support[] innovation, the near-term deployment of existing viable technologies, and scal[e] up the financing of credible, safe, and high-quality climate solutions that are compatible with other Sustainable Development Goals."

11.     In responding to Requests 7-10, please include any Communications with, or other actions taken by You, to engage with any nationally recognized statistical rating organization.

12.     Identify any target-setting guidelines and related "targets," including but not limited to any "2024 targets," "2030 targets," "2050 targets," or other "milestone targets," for Your operations, and identify how You set those targets, the sectors involved in those targets, and how Your targets are or will be aligned with Net-Zero Banking Alliance guidelines.

13.     Identify all entities to which You provide banking services that are part of the auto manufacturing industry, energy industry, or power generation industry.

14.     Identify any agreements You have reached with any other financial institution to coordinate action to achieve net-zero emissions targets, including but not limited to any commitments You have made as part of Your membership in any Global Climate Initiative of which other financial institutions are also members.

15.     Explain the basis of Your expectation, as a signatory to the Net-Zero Banking Alliance, that "governments will follow through on their own commitments to ensure that the objectives of the Paris Agreement are met," including but not limited to whether You believe the United States government will meet its commitments under the Paris Agreement, the legal mechanism by which it will meet these commitments, and any assumptions related to the structure and function of the government that underlie Your belief.

16.     Describe Your political projections underlying Your predictions regarding any mandates, or subsidies in the United States related to achieving environmental goals, including but not limited to the political composition of Congress and the executive branch, adopted legislation and administrative rules, the impact of any mandates or subsidies on energy prices and the impact of increasing energy prices on an incumbent party's control of Congress or the executive branch.

17.     Explain the manner in which You incorporated Your assumptions about energy transition and government mandates into Your general macroeconomic forecasts, and forecasts for Covered Companies. For example, to the extent Your analyses of credit risk for a Covered Company presumed that the United States would limit or prohibit fossil fuel-based energy production by a certain date, please explain how You incorporated that assumption into Your analyses of the costs of energy, the impact of those costs on economic growth in general and the credit risk of other Covered Companies, and the financial performance of other U.S. companies affected by those changes.

18.     Identify the methodology and results of any analysis You conducted relating to the economic impact of transitioning all Covered Companies to zero by 2050, including but not limited to the costs associated with the transition and any assumptions You made relating to any

RECEIVED
November 2, 2022
Office of the Attorney General

government action that might be taken to facilitate the transition such as new laws, regulations, mandates, or subsidies.

19.     Identify all entities with which You declined to do business or chose to stop doing business due either directly or indirectly to Environmental Goals, ESG Factors, or ESG Integration Practices and explain how the Environmental Goal, ESG Factor, or ESG Integration Practice informed Your decision.

20.     Identify any interactions or engagements You have had with a Covered Company related to the Covered Company's political, lobbying, or trade association activities, including any such activities related to environmental issues, reduction of greenhouse gas emissions, restrictions on fossil fuel use, or compliance with the Paris Agreement, and explain how any resulting change in a Covered Company's operations aligned with the economic interests of the Covered Company.

21.     In Your May 2022 "CO2eMission Executive Summary," You identified "interim emissions targets for key high-emitting sector portfolios," specifically the oil & gas and power sectors.  You claim that these targets were based on Net-Zero Banking Alliance "target-setting guidelines."  Please explain: (a) How You chose those industries/sectors and set those numerical targets, including specifically identifying all Communications You had with any outside party, including but not limited to contractors or consultants, relating to the setting of those targets; (b) How You intend to set targets for additional sectors in the future; and (c) How that expansion will align with NZBA guidelines.

22.     Please identify all entities to which You provide banking services that are part of the oil & gas sector, as You used that term in Your CO2eMission Methodology.

23.     Please identify all entities to which You provide banking services that are part of the power sector, as You used that term in Your CO2eMission Methodology.

24.     In Your "Environmental and Social Risk Management Framework" policy, You do "not directly or indirectly provide new financing, or [are] in the process of exiting existing relationships or reducing [Your] exposure as contracts expire," to, among other things, the "[c]oal industry, including companies deriving profits from mountaintop removal coal operations, or any project associated with the expansion of an existing or development of a new coal mine or new coal-fired power plant."  Please explain how you decided to adopt this policy, including but not limited to identifying all Communications You had with any outside party, including but not limited to any Global Climate Initiative or member thereof, related to the formulation of these policies.

25.     Please identify all members of Your: (a) Climate Change Working Group; (b) Enterprise Risk and Control Committee; (c) Climate Impact Risk Forum; (d) ESG Disclosure Council; (e) Clean Energy Vertical; and (f) Wells Fargo Asset Management Climate Change Working Group.

RECEIVED
November 2, 2022
Office of the Attorney General

## DEMANDS FOR DOCUMENTS

1.      Produce all Documents and Communications related to Your decision to join each Global Climate Initiative of which You are a member, including but not limited to the Net-Zero Banking Alliance.

2.      Produce all Documents and Communications related to any Global Climate Initiative or any committee, board, group, or subgroup thereof.

3.      Produce all Documents and Communications between You and any member of the Net-Zero Banking Alliance Steering Group related to any aspect of the Net-Zero Banking Alliance.

4.      Produce all Documents and Communications between You and any signatory or member of a Global Climate Initiative related to any ESG factors involving any Covered Company.

5.      Produce all Documents and Communications related to interactions, engagements, or meetings between You and any Covered Company related to the Covered Company meeting any Environmental Goal(s).

6.      Produce all Documents and Communications between You and any other financial institution related to a Covered Company achieving any Environmental Goal.

7.      Produce all Documents and Communications between You and any Covered Company about how it may be difficult for that Covered Company to finance its activities without achieving specified Environmental Goals.

8.      Produce all Documents and Communications related to any changes made by Covered Companies in response to the Communications, interactions, engagements, or meetings with You regarding achievement of Environmental Goals.

9.      Produce all Documents and Communications between You and any Covered Company related to ESG Factors or changes to the Covered Company's business practices in order to achieve Environmental Goals beyond what is required by applicable law, including but not limited to Documents sufficient to identify each such Covered Company.

10.     Produce all Documents and Communications related to any current, former, or prospective member or signatory of any Global Climate Initiative relating to any Covered Company.

11.     Produce all Documents and Communications related to any analysis You conducted on the economic impact of transitioning Covered Companies to net zero by 2050, regardless of whether the analysis is limited to You, any specific Covered Company, or the country or global economy in general.

RECEIVED
November 2, 2022
Office of the Attorney General

12.     Produce all Documents and Communications related to Research regarding the financial impact that following Your preferred course of action on environmental issues would have on any Covered Company, including but not limited to Documents sufficient to show all assumptions made in determining that financial impact, including but not limited to presumed government actions.

13.     Produce all Documents and Communications related to any condition of Your continuing to provide banking services to a Covered Company in which You required that the Covered Company make certain pledges or commitments related to any ESG Factor or Environmental Goal beyond that which was already required by applicable law.

14.     Produce all Documents and Communications related to each instance in which You declined to do business or chose to stop doing business with an entity due either directly or indirectly to Environmental Goals, ESG Factors, ESG Integration Practices, or previous commitments made to a Global Climate Initiative.

15.     Regarding each Covered Company, produce all Documents and Communications related to Your commitment as part of the Net-Zero Banking Alliance to "transition all operational and attributable GHG emissions from [Your] lending and investment portfolios to align with pathways to net-zero by mid-century, or sooner, including $CO_2$ emissions reaching net-zero at the latest by 2050."

16.     Regarding each Covered Company, produce all Documents and Communications related to Your commitment as part of the Net-Zero Banking Alliance to "facilitat[e] the necessary transition in the real economy through prioritizing client engagement, and offering products and services to support clients' transition."

17.     Regarding each Covered Company, produce all Documents and Communications related to Your commitment as part of the Net-Zero Banking Alliance to "engag[e] on corporate and industry (financial and real economy) action, as well as public policies, to help support a net-zero transition of economic sectors."

18.     Produce all Documents and Communications related to Your models regarding ESG risks for Covered Companies, including but not limited to ESG risks related to the possibility of an international conflict or war, ESG risks related to energy security, and ESG risks related to an entity's relationship with authoritarian governments and potential sanctions resulting therefrom.

19.     Produce all Documents and Communications related to Your participation in the "Responsible Banking Academy" of the UNEP FI.

20.     Identify and produce all Documents and Communications related to any target-setting guidelines or "Guidelines for Climate Change Target Setting."

21.     Produce all Communications relating to establishing emissions or emissions intensity reductions targets between any of the following groups or committees and any Global Climate Initiative or member thereof: (a) Board of Directors Risk Committee; (b) Board of

RECEIVED
November 2, 2022
Office of the Attorney General

8354BA41-16C9-42D7-8129-5050CFBB8B86 : 000093 of 000103

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

COM : 000093 of 000101

Corporate Responsibility Committee; (c) Climate Change Working Group; (d) Enterprise Risk and Control Committee; (e) Climate Impact Risk Forum; (f) ESG Disclosure Council; (g) Clean Energy Vertical; (h) Wells Fargo Asset Management Climate Change Working Group.

    22.    Produce all Documents identified, referred to, or consulted in any way in preparing Your response to any Request in this civil investigative demand.

**There is a continuing obligation to disclose pursuant to this CID.**

RECEIVED
November 2, 2022
Office of the Attorney General

**VERIFICATION**

I, _____, am employed by JP Morgan Chase & Co. as

a _____, and I am authorized to give this Verification on its

behalf.  I execute this verification and state the following under penalty of perjury under the laws

of the Commonwealth of Kentucky.

I have read the JP Morgan's objections and responses to the Civil Investigative Demand

and Subpoena issued on _____, 2022, and state that the factual matters set forth in the

responses are true, correct, and complete to the best of my knowledge, information and belief.

Further, I certify that records and documents produced herein were made at or near the time

of the occurrence of the matters set forth by, or from information transmitted by, a person with

knowledge those matters, and were made and maintained as a regular practice in the course of the

regularly conducted business activities.

Signature:_____

STATE OF _____

COUNTY OF _____

Subscribed, sworn to and acknowledged before me by _____

(name), _____ (title), on behalf of _____ on

_____, _____.

My commission expires: _____

Signature: _____

Print Name: _____

Title: _____

RECEIVED
November 2, 2022
Office of the Attorney General

8354AF41-16C9-42D7-8129-5050CFBB8B86 : 000096 of 000103

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

COM : 000096 of 000101

← → C ⌂ 🔒 kentucky.gov/Pages/Activity-stream.aspx?n=AttorneyGeneral&prid=1209

**Kentucky.gov**     Business  Education  Employment  Family & Health  Government  Residents  Tourism  News

Donate to the Team Eastern Kentucky Flood Relief Fund at **teamekyfloodrelieffund.ky.gov**. Resources for flood victims can be found at **governor.ky.gov/flood-resources**

# Attorney General Cameron Announces Multi-State Investigation into Six Major Banks for ESG Investment Practices

Krista Buckel
krista.buckel@ky.gov
502-696-5300
https://ag.ky.gov

700 Capitol Avenue, Suite 118
Frankfort KY 40601

**FRANKFORT, Ky. (October 19, 2022)** – Attorney General Cameron today announced a multi-state investigation into Bank of America, Citigroup, Goldman Sachs, JP Morgan Chase, Morgan Stanley, and Wells Fargo for alleged antitrust and consumer protection law violations related to ESG (environmental, social, governance) investment practices. As members of the United Nations' Net-Zero Banking Alliance, these banks are required to set carbon emissions reduction targets in their lending and investment portfolios to eliminate carbon emissions by 2050.

"Kentucky's consumer protection and antitrust laws prohibit companies from engaging in coordinated practices that block certain Kentucky businesses from accessing banking services," said Attorney General Cameron. "We joined this investigation to ensure Kentucky companies that reject the Biden Administration's anti-fossil fuel climate agenda have the same financial freedoms as those who accept it."

The coalition of attorneys general have issued civil investigative demands and subpoenas to Bank of America, Citigroup, Goldman Sachs, JP Morgan Chase, Morgan Stanley, and Wells Fargo, asking for documents relating to the companies' involvement with the United Nations' Net-Zero Banking Alliance. The information requested centers on suspected financial discrimination against companies that do not align with the United Nations' "net-zero" climate agenda.

Some of the subpoenas sent to the banks include requests to:

- Identify the objectives and mission of the Net-Zero Banking Alliance and describe how these objectives have been incorporated into the company's business operations.
- Describe the extent to which the company, as a signatory to the Net-Zero Banking Alliance, has taken steps to support the elimination of fossil fuels from economic sectors.
- Describe the extent to which the company, as a signatory to the Net-Zero Banking Alliance, has taken action to support the deployment and financing of net-zero climate policies.

Attorney General Cameron joined in the Missouri-led investigation along with attorneys general from Arizona, Arkansas, Indiana, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, Oklahoma, Tennessee, Texas, and Virginia.

Click the name of the corresponding bank to view a copy of the subpoena issued to Bank of America, Citigroup, Goldman Sachs, JP Morgan Chase, Morgan Stanley, and Wells Fargo.

RECEIVED
November 2, 2022
Office of the Attorney General

EXHIBIT 7

## CHAPTER 120

( SB 205 )

AN ACT relating to state dealings with companies that engage in energy company boycotts.

Be it enacted by the General Assembly of the Commonwealth of Kentucky:

➔ SECTION 1.   A NEW SECTION OF KRS CHAPTER 41 IS CREATED TO READ AS FOLLOWS:

*The General Assembly finds that:*

(1) *Fossil fuels currently supply more than eighty percent (80%) of the world's primary energy, and the United States Energy Information Administration still projects global consumption of fossil fuels to increase steadily at least through 2050;*

(2) *Restricting the supply of fossil fuels, without an immediate substitute for those fuels, only serves to raise prices on energy consumers, profoundly impacting the poorest among us;*

(3) *Denying financing to American and European fossil energy producers, who are among the most socially and environmentally responsible companies in the world, only serves to support hostile nations and less responsible producers;*

(4) *Banks are increasingly denying financing to creditworthy fossil energy companies solely for the purpose of decarbonizing their lending portfolios and marketing their environmental credentials, to the detriment of potential returns for their shareholders;*

(5) *Institutional investors are divesting from fossil energy companies and pressuring corporations to commit to the goal of the Paris Agreement to reduce greenhouse gas emissions to zero by 2050;*

(6) *Large investment firms are colluding to force fossil energy companies to cannibalize their existing businesses and direct time and attention away from increasing shareholder returns;*

(7) *Corporations are boycotting fossil energy companies by refusing to provide them with products or services; and*

(8) *Energy-producing states, when financially prudent, should avoid doing business with companies that are attacking the industries that substantially contribute to their state budgets.*

➔ SECTION 2.   A NEW SECTION OF KRS CHAPTER 41 IS CREATED TO READ AS FOLLOWS:

(1) *As used in Sections 1 to 4 of this Act:*

   (a) *"Company" means a for-profit sole proprietorship, organization, association, corporation, partnership, joint venture, limited partnership, limited liability partnership, limited liability company, or other entity or business association, including a wholly owned subsidiary, majority-owned subsidiary, parent company, or affiliate of those entities or business associations, that exists to make a profit;*

   (b) *"Direct holdings" means, with respect to a financial company, all securities of that financial company held directly by a state governmental entity in an account or fund in which a state governmental entity owns all shares or interests;*

   (c) *"Energy company boycott" means, without an ordinary business purpose, refusing to deal with, terminating business activities with, or otherwise taking any action that is intended to penalize, inflict economic harm on, or limit commercial relations with a company because the company:*

      1. *Engages in the exploration, production, utilization, transportation, sale, or manufacturing of fossil fuel-based energy and does not commit or pledge to meet environmental standards beyond applicable federal and state law; or*

      2. *Does business with a company described in subparagraph 1. of this paragraph;*

   (d) *"Financial company" means a publicly traded financial services, banking, or investment company;*

   (e) *"Indirect holdings" means, with respect to a financial company, all securities of that financial company held in an account or fund, such as a mutual fund, managed by one (1) or more persons*

RECEIVED
November 14, 2022
Office of the Attorney General

EXHIBIT 8

2                              ACTS OF THE GENERAL ASSEMBLY

*not employed by a state governmental entity, in which the state governmental entity owns shares or interests together with other investors not subject to the provisions of this chapter. The term does not include money invested under a plan described by Section 401(k) or 457 of the Internal Revenue Code;*

(f)      *"Listed financial company" means a financial company listed by the Treasurer;*

(g)      *"State governmental entity" means any state board, bureau, cabinet, commission, department, authority, officer, or other entity in the executive branch of state government that makes investments, deposits, or transactions in excess of one million dollars ($1,000,000) annually; and*

(h)      *"Treasurer" means the State Treasurer.*

(2)    *Notwithstanding any provision of law to the contrary, with respect to actions taken in compliance with Sections 1 to 4 of this Act, including all good faith determinations regarding financial companies as required by Sections 1 to 4 of this Act, a state governmental entity and the Treasurer are exempt from any conflicting statutory or common law obligations, including any obligations with respect to making investments, divesting from any investment, preparing or maintaining any list of financial companies, or choosing asset managers, investment funds, or investments for the state governmental entity's securities portfolios.*

(3)    *A state governmental entity shall not be subject to the requirements of Sections 1 to 4 of this Act if the state governmental entity determines that the requirements would be inconsistent with its fiduciary responsibility with respect to the investment of entity assets or other duties imposed by law relating to the investment of entity assets.*

➔SECTION 3.   A NEW SECTION OF KRS CHAPTER 41 IS CREATED TO READ AS FOLLOWS:

(1)    (a)    *The Treasurer shall prepare and maintain, and provide to each state governmental entity through publication on the Treasurer's official Web site, a list of all financial companies that, to the Treasurer's knowledge, have engaged in energy company boycotts. In maintaining the list, the Treasurer may:*

        1.    *Review and rely, as appropriate in the Treasurer's judgment, on all available information regarding financial companies, including information provided by the Commonwealth, nonprofit organizations, research firms, international organizations, governmental entities, or other organizations in the business of providing information relevant for investments; and*

        2.    *Request written verification from a financial company that it does not engage in energy company boycotts and rely on, as appropriate in the Treasurer's judgment and without conducting further investigation, research, or inquiry, a financial company's written response to the request.*

        (b)    *A financial company that fails to provide to the Treasurer a written verification under paragraph (a)2. of this subsection within sixty (60) days of receiving the request from the Treasurer is presumed to be engaging in energy company boycotts.*

        (c)    *The Treasurer shall update the list required in paragraph (a) of this subsection annually or more often as the Treasurer considers necessary based on information from, among other sources, those listed in paragraph (a) of this subsection.*

        (d)    *Within thirty (30) days of the date the list of financial companies that engage in energy company boycotts is first provided or updated, the Treasurer shall file the list with the Legislative Research Commission and the Attorney General and post the list on a publicly available Internet Web site.*

(2)    *Within thirty (30) days of a state governmental entity receiving the list provided under subsection (1)(a) of this section, the state governmental entity shall notify the Treasurer of the listed financial companies in which the state governmental entity owns direct or indirect holdings. Receipt of the list by the state governmental entity shall be presumed upon the publication of the list on the Treasurer's official Web site.*

(3)    (a)    *For each listed financial company identified under subsection (2) of this section, the state governmental entity shall send a written notice:*

        1.    *Informing the financial company of its status as a listed financial company;*

RECEIVED
November 2, 2022
Office of the Attorney General

> 2. *Warning the financial company that it may become subject to divestment by state governmental entities after the expiration of the period described by paragraph (b) of this subsection; and*

> 3. *Offering the financial company the opportunity to clarify its activities related to companies that are engaged in energy company boycotts.*

(b) *Within ninety (90) days of the financial company receiving notice under paragraph (a) of this subsection, the financial company must cease engaging in energy company boycotts in order to avoid becoming subject to divestment by state governmental entities.*

(c) *If, during the time provided by paragraph (b) of this subsection, the financial company ceases engaging in energy company boycotts, and the Treasurer is made aware of the cessation, the Treasurer shall remove the financial company from the list maintained under subsection (1)(a) of this subsection, and Sections 2, 3, and 4 of this Act shall no longer apply to the financial company unless it resumes engaging in energy company boycotts.*

(d) *If, after the time provided by paragraph (b) of this subsection expires, the financial company continues to engage in energy company boycotts, the state governmental entity shall sell, redeem, divest, or withdraw all publicly traded securities of the financial company, except securities described in subsection (5) of this section, according to the schedule provided in subsection (4) of this section.*

(4) (a) *A state governmental entity shall sell, redeem, divest, or withdraw all publicly traded securities of a listed financial company within one (1) year of the expiration of the time period provided in subsection (3)(b) of this section.*

(b) *If a financial company that ceased engaging in energy company boycotts after receiving notice under subsection (3) of this section resumes its boycott, the state governmental entity shall send a written notice to the financial company informing it that the state governmental entity will sell, redeem, divest, or withdraw all publicly traded securities of the financial company according to the schedule in paragraph (a) of this subsection.*

(c) *A state governmental entity may delay the schedule for divestment under paragraph (a) of this subsection only to the extent that the state governmental entity determines, in the state governmental entity's good faith judgment, and consistent with the entity's fiduciary duty, that divestment from listed financial companies will likely result in a loss in value or a benchmark deviation described in subsection (6) of this section.*

(d) *If a state governmental entity delays the schedule for divestment under paragraph (c) of this subsection, the state governmental entity shall submit a report within thirty (30) days of the decision to the Treasurer, the Legislative Research Commission, and the Attorney General stating the reasons and justification for the state governmental entity's delay in divestment from listed financial companies. The report shall include documentation, including objective numerical estimates, supporting its determination that the divestment would result in a loss in value or a benchmark deviation described by subsection (6) of this section.*

(5) *A state governmental entity shall not be required to divest from any indirect holdings in actively or passively managed investment funds or private equity funds. The state governmental entity shall submit the list of all financial companies that have engaged in energy company boycotts to each investment fund manager and request that if any of those companies are present within their funds, they remove those financial companies from the fund or create a similar actively or passively managed fund with indirect holdings devoid of listed financial companies. If a manager creates a similar fund with substantially the same management fees and same level of investment risk and anticipated return, the state governmental entity may replace all applicable investments with investments in the similar fund in a time frame consistent with prudent fiduciary standards but not later than the four hundred fifty (450) days after the date the fund is created.*

(6) (a) *A state governmental entity may cease divesting from one (1) or more listed financial companies only if reasonable evidence shows that:*

> 1. *The state governmental entity has suffered or will suffer a material financial loss as a result of having to divest from listed financial companies under this section; or*

RECEIVED
November 21, 2022,
Office of the Attorney General

> **2.**    *An individual portfolio that uses a benchmark-aware strategy would be subject to an aggregate expected deviation from its benchmark as a result of having to divest from listed financial companies under this section.*

> **(b)**    *A state governmental entity may cease divesting from a listed financial company as provided by this section only to the extent necessary to ensure that the state governmental entity does not suffer a loss in value or deviate from its benchmark as described by paragraph (a) of this subsection.*

> **(c)**    *Before a state governmental entity may cease divesting from a listed financial company under this section, the state governmental entity shall provide a written report to the Treasurer, the Legislative Research Commission, and the Attorney General setting forth the reason and justification, supported by reasonable evidence, for deciding to cease divestment or to remain invested in a listed financial company.*

> **(d)**    *This section shall not apply to reinvestment in a financial company that is no longer a listed financial company under subsection (1) of this section.*

➔SECTION 4.   A NEW SECTION OF KRS CHAPTER 41 IS CREATED TO READ AS FOLLOWS:

*(1)*    *No later than December 1, 2023, and each December 1 thereafter, each state governmental entity shall file a publicly available report with the Treasurer, the Legislative Research Commission, and the Attorney General that:*

> **(a)**    *Identifies all securities sold, redeemed, divested, or withdrawn in compliance with subsection (4) of Section 3 of this Act; and*

> **(b)**    *Summarizes any changes made under subsection (5) of Section 3 of this Act.*

*(2)*    *The Attorney General or the Treasurer may bring any civil action necessary to enforce Sections 1 to 4 and 5 of this Act.*

➔SECTION 5.   A NEW SECTION OF KRS CHAPTER 41 IS CREATED TO READ AS FOLLOWS:

*(1)*    *As used in this section:*

> **(a)**    *"Company" has the same meaning as in Section 2 of this Act, except that it shall not include a sole proprietorship;*

> **(b)**    *"Energy company boycott" has the same meaning as in Section 2 of this Act; and*

> **(c)**    *"Governmental entity" means any state board, bureau, cabinet, commission, department, authority, officer, or other entity in the executive branch of state government.*

*(2)*    *This section applies only to a contract that:*

> **(a)**    *Is between a governmental entity and a company with ten (10) or more full-time employees; and*

> **(b)**    *Has a value of one hundred thousand dollars ($100,000) or more that is to be paid wholly or partly from public funds of the governmental entity.*

*(3)*    *Except as provided in subsection (4) of this section, a governmental entity shall not enter into a contract with a company for goods or services unless the contract contains a written verification from the company that it:*

> **(a)**    *Does not engage in energy companies boycotts; and*

> **(b)**    *Will not engage in energy company boycotts during the term of the contract.*

*(4)*    *The requirements of subsection (3) of this section shall not apply to a governmental entity that determines that those requirements are inconsistent with the governmental entity's constitutional, statutory, or fiduciary duties related to the issuance, incurrence, or management of debt obligations or the deposit, custody, management, borrowing, or investment of funds.*

➔Section 6.   KRS 286.2-015 is amended to read as follows:

(1)    **Except as provided in Sections 1 to 4 and 5 of this Act,** all political subdivisions of the Commonwealth shall be prohibited from enacting and from enforcing ordinances, resolutions, and regulations pertaining to the financial or lending activities of persons or entities which:

(a)    Are subject to the jurisdiction of the department or the provisions of this chapter;

RECEIVED
November 2, 2022
Office of the Attorney General

8354BA41-16C9-42D7-8129-5050CFBB8B86 : 000100 of 000103

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

COM : 000100 of 000101

CHAPTER 120                                                                    5

(b)     Are subject to the jurisdiction or regulatory supervision of the Board of Governors of the Federal Reserve System, the Office of the Comptroller of the Currency, the Office of Thrift Supervision, the National Credit Union Administration, the Farm Credit Administration, the Federal Deposit Insurance Corporation, or the United States Department of Housing and Urban Development; or

(c)     Originate, purchase, sell, assign, securitize, assist, facilitate, or service property interests or obligations created by financial transactions or loans made, executed, or originated by persons or entities referred to in paragraph (a) or (b) of this subsection.

(2)     The requirements of this section shall apply to all ordinances, resolutions, or regulations pertaining to lending activities, including any ordinances, resolutions, or regulations which limit or disqualify persons or entities from doing business with a political subdivision based upon financial or lending activities or the imposition of additional reporting requirements or other obligations on such persons or entities seeking to do business with a political subdivision.

(3)     Any provision of this chapter preempted by federal law with respect to a national bank or federal savings association shall not apply to the same extent to an operating subsidiary of a national bank or federal savings association.

(4)     The provisions of this chapter shall be interpreted and applied to the fullest extent practicable in a manner consistent with applicable federal laws and regulations and with applicable policies and orders of federal regulatory agencies and shall not be deemed to constitute an attempt to override federal law.

(5)     Nothing in this section shall be interpreted as preventing the enforcement of ordinances, regulations, or resolutions of political subdivisions of the Commonwealth pertaining to civil rights.

**Signed by Governor April 8, 2022.**

AOC-E-105 Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice *Courts.ky.gov*

CR 4.02; Cr Official Form 1



Case #: **22-CI-00842**
Court: **CIRCUIT**
County: **FRANKLIN**

# CIVIL SUMMONS

8354BA41-16C9-42D7-8129-5050CFBB8B86 : 000102 of 000103

*Plantiff,* **HOPE OF KENTUCKY, LLC ET AL VS. DANIEL CAMERON, AS KY ATTORN**, *Defendant*

TO: **DANIEL CAMERON, AS KY ATTORNEY GENERAL**
**700 CAPITOL AVENUE, SUITE 118**
**FRANKFORT, KY 40601**

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Amy Feldman
Franklin Circuit Clerk
Date: **10/31/2022**

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: ______________________________

☐ Not Served because: ______________________________

Date: ____________________, 20______

______________________________
Served By

______________________________
Title

CI : 000001 of 000001

Summons ID: @00001142613
CIRCUIT: 22-CI-00842 Return to Filer for Service
HOPE OF KENTUCKY, LLC ET AL VS. DANIEL CAMERON, AS KY ATTORN

RECEIVED
November 2, 2022
Office of the Attorney General

**Commonwealth of Kentucky**

**Amy Feldman, Franklin Circuit Clerk**

| Case #: **22-CI-00842** | Envelope #: **5216705** |
|---|---|
| Received From: **M. THURMAN SENN** | Account Of: **M. THURMAN SENN** |
| Case Title: **HOPE OF KENTUCKY, LLC ET AL VS. DANIEL CAMERON, AS KY ATTORN** | Confirmation Number: **152189275** |
| Filed On **10/31/2022  2:39:16PM** | |

| # | Item Description | Amount |
|---|---|---|
| 1 | Court Facilities Fee | $25.00 |
| 2 | Access To Justice Fee | $20.00 |
| 3 | Money Collected For Others(Court Tech. Fee) | $20.00 |
| 4 | Money Collected For Others(Attorney Tax Fee) | $5.00 |
| 5 | Library Fee | $3.00 |
| 6 | Civil Filing Fee | $150.00 |
| | TOTAL: | $223.00 |

Generated: 10/31/2022

Page 1 of 1

RECEIVED

November 2, 2022

Office of the Attorney General